IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONSOLIDATED RAIL CORPORATION**<br>2001 Market Street<br>Philadelphia, PA 19103 | : <br> : <br> : <br> : |
| Plaintiff, | : <br> : |
| v. | :     CIVIL ACTION NO. 07- <br> : |
| **JOHN M. GRIBBIN,**<br>1685 Wicomico Lane<br>Virginia Beach, VA 23464 | : <br> : <br> : |
| Defendant | : <br> : |

## COMPLAINT FOR DECLARATORY RELIEF

Consolidated Rail Corporation ("Conrail"), by and through its undersigned counsel, brings this action for Declaratory Relief in order to stay defendant John Gribbin's action filed in the Court of Common Pleas Philadelphia County, Pennsylvania, and to invoke this Court's original and exclusive jurisdiction as the successor to the Special Court-Regional Rail Reorganization Act over matters concerning claims of successor liability asserted against Conrail. In support thereof, Conrail avers as follows:

### THE PARTIES

1.     Plaintiff Conrail is a corporation organized under the laws of the Commonwealth of Pennsylvania pursuant to Section 301 of the Regional Rail Reorganization Act of 1973, as amended ("Rail Act", 45 U.S.C. § 701 *et seq.*), and has its principal place of business at 2001 Market Street, Philadelphia, Pennsylvania 19103.

2.     Defendant John Gribbin ("Defendant") is a resident of Virginia.

**JURISDICTION**

3.      This Court has original and exclusive jurisdiction over this action by

virtue of Sections 209(e) and 209(g) of the Rail Act, 45 U.S.C. § 719(e), (g), and the Declaratory

Judgment Act, 28 U.S.C. §§ 2201-2202.

**THE PENNSYLVANIA ACTION**

4.      On June 20, 2007, Defendant filed a complaint in the Court of Common

Pleas of Philadelphia County, Pennsylvania (*Gribbin v. Consolidated Rail Corp.*, June Term

2007-002320) (hereinafter the "Pennsylvania Action") against Conrail.  Defendant alleges that

during the course of his employment from 1941 until 1943 and from 1946 until 1949 with an

unnamed, alleged predecessor of Conrail (hereinafter "Alleged Predecessor")[1], he was

negligently exposed to asbestos in violation of the Federal Employers' Liability Act, 45 U.S.C.

§ 51, *et seq*. (hereinafter "FELA") and the Federal Boiler Inspection Act, 49 U.S.C. § 20701, *et

seq*. (hereinafter "FBIA").  Defendant's complaint in the Pennsylvania Action is attached hereto

as Exhibit A.

5.      The Pennsylvania Action seeks to impose successor liability on Conrail in

connection with Defendant's employment with Alleged Predecessor, by virtue of the erroneous

belief that Conrail is the legal successor-in-interest to Alleged Predecessor and is therefore liable

for any injuries arising from Defendant's employment with Alleged Predecessor.

6.      The Pennsylvania Action also seeks to impose direct liability on Conrail,

even though Defendant avers to have only worked for "Defendant'ss [sic] predecessor." Ex. A,

¶ 2.

---

[1] Defendant does not name the alleged predecessor in any averment in the Pennsylvania complaint.  The complaint is filed against "Consolidated Rail Corporation, A Pennsylvania Corporation, individually and as successor-in-interest to the Delaware, Lackawanna & Western Railroad".

## THE RAIL ACT AND THE CONVEYANCE OF
## ASSETS TO CONRAIL

7.      Conrail was created as a federally-funded takeover of the major railroad companies in the Northeast through the Rail Act, 45 U.S.C. § 701, *et seq.*

8.      Pursuant to Section 206 of the Rail Act, 45 U.S.C. § 716, the United States Railway Association ("USRA") developed the Final System Plan ("Plan") in which it designated that certain assets of Northeast railroad companies were to be transferred to Conrail.

9.      Pursuant to Section 209(c) of the Rail Act, 45 U.S.C. § 719(c), the USRA certified to this Court the rail properties of Northeast railroad companies designated in the Plan were to be conveyed to Conrail.

10.      Pursuant to Section 303 of the Rail Act, 45 U.S.C. § 743, this Court issued Conveyance Orders on or around March 25, 1976 ("Conveyance Orders") directing the trustees of the Northeast railroad companies to execute documents, effective April 1, 1976, conveying certain rail properties to Conrail "free and clear of any liens or encumbrances" under Section 303(b)(2) of the Rail Act, 45 U.S.C. § 743(b)(2).

11.      This Court has reinforced Congress's intent in declaring that the Rail Act provided Conrail with a legal and financial "fresh start" to commence a financially viable railroad operation. *See Penn Central Corp. v. United States*, 862 F. Supp. 437, 446 (S.C.R.R.R.A. 1994); *Consolidated Rail Corp. v. Commonwealth of Pa., Dep't of Gen. Svcs.,* No. 97-RR-01 (CRW) (D.D.C. 1997) (attached hereto as Exhibit B).

12.      In light of the Rail Act's "fresh start" policy, this Court has concluded that the Conveyance Orders shield Conrail from successor liability arising from the acts or omissions of the railroads which conveyed their rail properties to Conrail. *See Consolidated Rail Corp. v.*

*United States*, 883 F. Supp. 1565, 1576-77 (S.C.R.R.R.A. 1995); *Penn Central Corp., supra*, 862 F. Supp. at 446.

13.    Conrail did not come into existence until April 1, 1976, when it was conveyed certain of the Northeast railroad companies' assets pursuant to the Rail Act.

14.    Because Defendant's employment occurred prior to the creation of Conrail, Conrail could not have exposed Defendant to asbestos.

15.    There is no evidence supporting the claim of exposure during Defendant's employment with Alleged Predecessor.

16.    Pursuant to Section 209(e)(2) of the Rail Act, 45 U.S.C. § 719(e)(2), this Court has original and exclusive jurisdiction over actions involving the interpretation and implementation of conveyance orders entered by this Court and documents executed in accordance with those orders.

17.    Pursuant to Section 209(g) of the Rail Act, 45 U.S.C. § 719(g), this Court may stay or enjoin any action or proceeding in any State or Federal Court, other than the United States Supreme Court, if such action is contrary to the provisions of the Rail Act or any orders of this Court pursuant thereto.

18.    This Court has affirmed that it is the final arbiter of the correct interpretation of the Rail Act, the Final System Plan, and the orders and conveyance documents executed pursuant thereto. *See Consolidated Rail Corp., supra*, 883 F. Supp. 1565.

19.    To preserve its original and exclusive jurisdiction under the Rail Act, this Court has the power to stay FELA actions against Conrail which seek to impose successor liability on Conrail based upon alleged actions or omissions of railroad companies that conveyed certain of their rail assets to Conrail.

20.     Accordingly, the Pennsylvania Action directly contravenes the Rail Act, this Court's Conveyance Orders and this Court's prior holdings.  Conrail cannot be held liable as a successor.

21.     There is a case of actual controversy between Conrail and Defendant that is within this Court's original and exclusive jurisdiction, and that controversy has ripened to the point at which an affirmative declaration from this Court is needed.  This Court is authorized, pursuant to the Declaratory Judgment Act, to declare the rights and other legal relations of the parties.  *See* 28 U.S.C. § 2201(a).

22.     Given that the Rail Act and NRSA provide for exclusive jurisdiction in this Court for claims seeking to assert successor liability against Conrail, the District Court of the United States District Court for the District of Columbia sitting as the Special Court is the only Court that can provide the declaratory relief Conrail seeks.

23.     Direct liability cannot be asserted against Conrail for actions of alleged predecessors.

24.     Pursuant to the Rail Act, the Final System Plan established by the USRA, and this Court's Conveyance Orders, Conrail may not be held liable as a successor in liability for the alleged acts or omissions occurring prior to the April 1, 1976 conveyance date.

25.     No evidence supports the assertion that Defendant was exposed to asbestos during employment with Conrail.

WHEREFORE, Conrail respectfully requests:

(a)     that this Court stay the Pennsylvania Action pending the resolution of this action;

(b)     that this Court enter a final order declaring that Conrail has no liability as a successor;

(c)     that this Court enjoin Defendant from seeking to hold Conrail liable for any acts or omissions of Alleged Predecessor;

(d)     that this Court grant Conrail such other relief as may be appropriate.

Respectfully submitted,

Of Counsel:

Laurence Z. Shiekman
Ken Massey
T. Joel Zuercher
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC  20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665
carpenterc@pepperlaw.com

Attorney for Plaintiff,
Consolidated Rail Corporation

July 27, 2007

-6-

# EXHIBIT A



5145

THIS IS NOT AN ARBITRATION MATTER
ASSESSMENT OF DMAGES IS NOT REQUIRED
JURY TRIAL IS DEMANDED

COFFEY KAYE MYERS & OLLEY
BY:    MICHAEL J. OLLEY, ESQUIRE
IDENTIFICATION NO. 56118
Suite 718, Two Bala Plaza
Bala Cynwyd, PA  19004
(610) 668-9800
(610) 667-3352 (Fax)

ATTEST

JUN 2 0 2007

J. COURTNEY

Attorneys For: Plaintiff

JOHN M. GRIBBIN                          :
1685 Wicomico Lane                       :
Virginia Beach, VA  23464                :
                                         :
        Plaintiff,                       :
                                         :
                                         :
v.                                       :
                                         :
CONSOLIDATED RAIL CORPORATION,           :
A Pennsylvania Corporation, individually and   :
as successor-in-interest to the Delaware,      :
Lackawanna & Western Railroad            :
2001 Market Street, 16th Floor           :
Philadelphia, PA  19103                  :
                                         :
                                         :
        Defendant                        :
                                         :
                                         :
                                         :
                                         :

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY

**JUNE 2007**

TERM 2007

002329

No.

JURY TRIAL DEMANDED

JURY FEE PAID

<u>CIVIL ACTION: Negligence</u>
<u>2F - Personal Injury - FELA</u>

## NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

**YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE OR KNOW A LAWYER, THEN YOU SHOULD GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:**

**LAWYER REFERRAL SERVICE**
**THE PHILADELPHIA BAR ASSOCIATION**
**101 MARKET STREET, 11TH FLOOR**
**PHILADELPHIA, PA 19107**
**TELEPHONE: (215) 238-6300**

2

## COMPLAINT

John M. Gribbin (hereinafter "Plaintiff"), an adult individual residing at1685 Wicomico

Lane, Virginia Beach, Virginia 23464, alleges the following counts alternatively and

conjunctively in his Complaint against the Defendant:

1.    Defendant, CONSOLIDATED RAIL CORPORATION is organized and existing

under the laws of the State of Pennsylvania, and at all relevant times, Defendant and/or its

predecessors have and continue to do business within the State of Pennsylvania and the County

of Philadelphia as a common carrier of interstate commerce and intrastate commerce and has

engaged in interstate commerce and transportation for many years.

2.    Plaintiff worked as a pipefitter and sheetmetal worker for Defendant'ss

predecessor from 1941 until 1943 and from 1946 until 1949 moving trains and in the rail yards

where he would be exposed to, work with, and work around asbestos, asbestos containing

products, silica, silica containing products, and coal dust in the performance of his duties in and

around rail cars, moving trains, locomotives, locomotive boilers and their appurtenances,

locomotive repair shops, and other shops and buildings in and around Scranton, Pennsylvania.

3.    Plaintiff's cause of action against Defendant arises under the Federal Employer's

Liability Act, 45 U.S.C. Secs. 51-60, and the Federal Boiler Inspection Act, 49 U.S.C. Secs.

20701-20703 as amended and this Court has previously determined that jurisdiction and venue

exists in this type of case.

4.    At the time of his injuries, Plaintiff's duties were in furtherance of interstate

commerce, and the Plaintiff's work directly, closely and substantially affected the interstate

commerce carried on by the Defendant and/or its predecessors.

5.    While engaged in the course of his employment with the Defendant and/or

Defendant'ss predecessors, the Plaintiff used and/or hauled asbestos and/or asbestos containing

materials, silica and/or silica containing materials and/or coal and/or worked around others who

used and/or hauled asbestos containing materials, silica and/or silica containing materials and/or

coal, which resulted in the Plaintiff's inhalation and/or ingestion of asbestos dust, silica dust

and/or coal dust.

6.    While engaged in the course of his employment with the Defendant and/or

Defendant'ss predecessors, Plaintiff was required to work with and around toxic substances,

including but not limited to asbestos and/or materials containing asbestos; coal and/or coal dust;

and silica and/or materials containing silica.

7.    While engaged in the course of his employment with the Defendant and/or

Defendant'ss predecessors, the Plaintiff was exposed to asbestos and/or asbestos containing

materials and/or asbestos dust and/or silica and/or silica containing materials and/or silica dust

and/or coal and/or coal dust resulting from the Plaintiff's use, hauling and/or working around

others who used and/or hauled asbestos and/or asbestos containing materials and/or silica and/or

silica containing materials and/or coal.

8.    At all times, Plaintiff was unaware of the dangerous propensities of asbestos

and/or asbestos-containing materials, and/or silica and/or silica containing materials; and/or coal

and was unaware of the cause of his latent abnormal medical condition.

9.    At all times material hereto, Defendant and Defendant'ss predecessors knew, or

should have known, that exposure to dust including but not limited to asbestos fibers and/or dust

and/or silica dust and/or coal dust was dangerous, toxic and potentially deadly.

10.    At all times material hereto, Defendant and/or Defendant'ss predecessors knew,

or should have known, that Plaintiff would be exposed to the inhalation and/or ingestion of dust,

4

including but not limited to asbestos fibers and/or dust, and/or silica dust, and/or coal dust resulting from the use of and/or handling of said products and/or said materials.

11.    Despite this knowledge, Defendant and/or Defendant'ss predecessors:

(a)    Failed to provide Plaintiff with a reasonably safe place to work;

(b)    Failed to furnish Plaintiff with safe and suitable tools and equipment including adequate protective masks and/or protective inhalation devices;

(c)    Failed to warn Plaintiff of the true nature and hazardous effects of asbestos containing products; silica and/or coal;

(d)    Failed to operate the locomotive repair facility in a safe and reasonable manner;

(e)    Failed to provide instructions or a method for the safe use of asbestos containing products and/or silica and/or coal;

(f)    Failed to provide adequate, if any, instructions in the use and/or removal of asbestos products and/or the use, loading and/or hauling of silica and/or coal;

(g)    Failed to test said products and/or materials prior to requiring employees to work with the same, to determine their ultra-hazardous nature;

(h)    Failed to formulate and use a method of handling said products and/or materials, exposing Plaintiff to high concentrations of asbestos dust and/or fibers and/or silica dust and/or coal dust;

(i)    Failed to provide Plaintiff with safe and proper ventilation systems in the locomotive repair facility;

(j)    Allowed unsafe practices to become the standard practice;

5

(k)     Failed to exercise reasonable care in publishing and enforcing a safety plan and method of handling asbestos-containing products;

(l)     Failed to inquire of the suppliers of asbestos and/or silica and/or coal of the hazardous nature(s) of asbestos, silica and/or coal;

(m)     Required employees to work with ultra-hazardous products and/or materials;

(n)     Failed to exercise adequate, if any, care for the health and safety of employees, including the Plaintiff;

(o)     Failed to periodically test and examine Plaintiff to determine if he was subject to any ill effects of his exposure to said products and/or materials;

(p)     Failed to periodically inspect the shops, buildings, equipment, railroad cars, locomotives, boilers, and their appurtenances in order to ascertain any dust and/or fiber contamination;

(q)     Failed to limit access to areas where these products and/or materials were being used;

(r)     Failed to advise Plaintiff to shower before going home, failed to provide such shower facilities and failed to enforce the use of such facilities;

(s)     Failed to advise Plaintiff to have his clothing and belongings cleaned outside of the home, failed to provide such cleaning services and failed to enforce the use of such services;

(t)     Failed to provide Plaintiff with a separate locker for clothing worn home to prevent such clothing from becoming contaminated with dust, including but not

6

limited to asbestos fibers and/or dust and/or silica dust and/or coal dust from clothing worn at work;

(u)    Failed to test such products and/or materials prior to use by Defendant and/or Defendant's predecessors employees.

12.    The Defendant and/or Defendant's predecessors failed to comply with the provisions and requirements of the Federal Employer's Liability Act, 45 U.S.C. Secs. 51-60, as amended.

13.    The Defendant and/or its predecessors, through Defendant's agents, servants and employees, violated the Locomotive Boiler Inspection Act, 49 U.S.C. Secs. 20701-20703, as amended, and Defendant and/or Defendant's predecessors failed to provide Plaintiff with a locomotive and its appurtenances, which were in a proper and safe condition, and safe to work on or around.

14.    As a direct and proximate result of the above negligence and statutory violations of the Defendant and/or Defendant's predecessors, Plaintiff was caused to contract asbestos-caused diseases and/or injuries. Plaintiff neither knew of nor should have known of his injuries more than three years from the date of the filing of this complaint.

15.    As a direct and proximate result of the negligence and/or statutory violations described above, Plaintiff has suffered and will continue to suffer throughout the remainder of his life, great pain, extreme nervousness and mental anguish, and will continue to suffer fright and fear of his impending death. Plaintiff knows that his illness is permanent in nature and that he will be forced to suffer from the same for the remainder of his life; Plaintiff has been obliged to spend various sums of money for treatment and he will be obliged to continue to do so in the future. Plaintiff has sustained a loss of earnings and earning capacity, and his ability to render

7

services, society, affection, counseling and support to his family has been diminished, his life expectancy has been shortened and his enjoyment of life has been impaired. As a direct result of the negligence and/or statutory violations described above, Plaintiff suffers from extreme nervousness, mental anxiety and fear of progression of his asbestos-caused diseases and/or injuries. In addition, because of his asbestos-caused diseases and/or injuries, the Plaintiff now has an increased risk of contracting other cancers and/or conditions.

**WHEREFORE**, Plaintiff has been damaged and claims damages of the Defendant, jointly and severally, in an amount in excess of FIFTY THOUSAND DOLLARS ($50,000.00), together with interest and costs of this proceeding as well as other such relief as may be appropriate under the circumstances. **This amount does not require submission to arbitration.**

COFFEY, KAYE, MYERS & OLLEY, ATTORNEYS AT LAW

BY: _____
Michael J. Olley, Esquire
*Attorney for Plaintiff*

COFFEY, KAYE, MYERS & OLLEY, ATTORNEYS AT LAW
Two Bala Plaza
Suite 718
Bala Cynwyd, PA 19014
(610) 668-9800
Firm # (610) 667-3352 (FAX)

Willard J. Moody, Jr., Esq.
John Hall, Esq.
Moody, Strople, Kloeppel & Basilone, Inc.
500 Crawford Street
Commerce Bank Bldg.
P.O. Box 1138
Portsmouth, Virginia 23705
(757) 393-6020

8

(757) 399-3019 (facsimile)

H. Seward Lawlor, Esq.
John F. Conley, Esq.
Kip A. Harbison, Esq.
Glasser and Glasser, P.L.C.
Crown Center, Suite 600
580 East Main Street
Norfolk, Virginia 23510
(757) 625-6787
(757) 627-5908 (facsimile)

**VERIFICATION**

COMMONWEALTH OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

    I, John M. Gribbin, being party to the instant action, state that the foregoing averments are true and correct based upon my personal knowledge or information and belief and that the facts contained therein are subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn falsifications to authorities.

                                              Plaintiff

10

# EXHIBIT B

03/24/97  MON 16:47 FAX 202 273 0479        ADMIN/SERVICE                    ☐002
MAR-24-1997 11:56        JUDGE WEINER                                       P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION        :
                                     :
                                     :
                                     :
            v.                       :        Special Court
                                     :        Regional Rail Act
                                     :        C.A. NO. 97-RR-01[1]
                                     :
                                     :
COMMONWEALTH OF PENNSYLVANIA         :
DEPARTMENT OF GENERAL SERVICES       :
and THE FRANK BRISCOE CO., INC.      :

                                                          FILED

WEINER, J.[2]                        March 24, 1997  MAR 24 1997

                                                  NANCY MAYER-WHITTINGTON, CLERK
                                                     U.S. DISTRICT COURT
MEMORANDUM OPINION AND ORDER

        Consolidated Rail Corporation (Conrail) brought this
action for declaratory relief against the Commonwealth of Pennsyl-
vania Department of General Services (DGS) and The Frank Briscoe
Company, Inc. (Briscoe), seeking a partial stay of proceedings in
the Court of Common Pleas of Dauphin County.  Conrail seeks a
declaration that the subject matter of the underlying suit is
partly within the exclusive jurisdiction of this court[3], and that

_____

[1]The Special Court, Regional Rail Reorganization Act of 1973
was abolished by Congress effective January 17, 1997, and its
original jurisdiction transferred to the United States District
Court for the District of Columbia.

[2]United States District Judge for the Eastern District of
Pennsylvania, and Judge of the Special Court, Regional Rail
Reorganization Act, sitting by designation.

[3]"This court" as used herein is intended to refer to the
United States District Court for the District of Columbia,
exercising the exclusive jurisdiction of the Special Court.

03/24/97  MON 16:47 FAX 202 273 0479        ADMIN/SERVICE                    ⊠003
MAR-27-1997  11:57        JUDGE WEINER                                     P.02/09

it has no liability as a successor or assignee of the Penn Central
Corporation.  Also before the court is a motion by the defendants
to dismiss.  This matter was heard on an expedited basis since the
Dauphin County action is scheduled for imminent trial.[4]  For the
reasons which follow, Conrail's motion for a partial stay of the
Dauphin County action is granted, the defendants' motion to dismiss
is denied and final declaratory judgment is entered in favor of
Conrail and against the defendants.

        Our jurisdiction is asserted under Section 209(e)(2) of
the Rail Act, 45 U.S.C. § 719(e)(2).  This action arises out of the
construction of the Pittsburgh Exposition and Convention Center.
On July 1, 1975, the trustees of the Penn Central Corporation
transferred title to the land underlying the site of the Convention
Center to DGS by a deed.  At the time of the conveyance, Conrail
was not yet in existence and hence had no interest in the property.
By Conveyance Order issued by this court on March 25, 1976, we
directed Penn Central to execute a deed effective April 1, 1976,
conveying certain of Penn Central's rail properties to Conrail.
Under Section 303(b)(2) of the Rail Act, such conveyance was to be
made "free and clear of any liens or encumbrances" consistent with
the Final System Plan proposed by the United States Rail Associa-
tion.  The conveyance included all of Penn Central's remaining
interests in the land underlying the Convention Center.  Since Penn
Central had already conveyed the land to DGS, the April 1, 1976

───────────────

[4]The parties have now also agreed to have the court enter a
final decision on the merits, as well as the motion for partial
stay.

2.

03/24/97  MON 16:48 FAX 202 273 0479          ADMIN/SERVICE                    ☒004
MAR-24-1997  11:57          JUDGE WEINER                              P.03/09

conveyance in effect transferred Penn Central's remaining rights of way, transportation easements and other easements. Both the deed and the accompanying bill of sale contained language limiting Conrail's liability for obligations accruing prior to the date of delivery of the deed.[5]

The Convention Center was completed in August 1981, nearly two years behind schedule. Briscoe, who served as general contractor on the project, along with DGS have commenced two civil actions seeking to recover damages allegedly attributable to the delay in construction. They brought a joint action in Dauphin County in June 1986 naming thirteen defendants. Conrail was not joined. Rather, Conrail became a party some two years later when it was named in a third party complaint filed by the Peter F.

---

[5]The deed provided:
. . . the Grantee (Conrail) assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto and, where an obligation or liability is related to a period which is both before and after such date, the Grantee assumes only that portion of the obligation or liability which is reasonably allocable to the part of the period after such sale.
Schedule E to the Bill of Sale provided:
Grantee assumes the foregoing contracts and obligation to perform and observe all covenants and conditions therein contained on the part of Grantor (Penn Central) to be performed and observed after the date of delivery hereof . . . Grantee assumes no liabilities or obligations of any kind which have accrued prior to the date of delivery hereof or which thereafter arise out of any event, act or failure to act which occurred prior thereto in connection with the foregoing contracts or any property which is the subject thereof.

3

03/24/97 MON 16:48 FAX 202 273 0479    ADMIN/SERVICE    ☑005
MAR-24-1997 11:58    JUDGE WEINER    P.04/09

Loftus Division of Eichleay Engineering (Loftus). DGS filed a second action in 1989 in which it named eight defendants; again Conrail was not one of them. It was again joined by Loftus. In 1995, the two actions were consolidated for trial.

The claims against Conrail arise out of the undisclosed presence of an underground electrical ductbank, which was struck by construction workers driving piles for the new Convention Center. The ductbank was struck after Penn Central had conveyed the land to DGS, and after its remaining interests were conveyed to Conrail. The claims against Conrail seek to hold it liable both as a successor to Penn Central, as well as for independent, post-conveyance acts of its agents who were on site during the construction. Successor liability is premised upon Penn Central's pre-conveyance statements to DGS that all utilities had been abandoned, Penn Central's failure to de-energize and relocate the power line, and its failure to include the power line on construction drawings. Direct liability is premised upon Conrail's unreasonable delay in moving the power line after its accidental discovery, as well as the fact that its on site agent failed to warn of the existence of the power line.

Reduced to its essence, Conrail argues that since the successor liability issues presented in the Dauphin County action are within the exclusive jurisdiction of this court, the Dauphin County action must be stayed. Pursuant to Section 209(g) of the Rail Act, this court may stay or enjoin any action or proceeding in any state or federal court, other than the United States Supreme

4

03/24/97  MON 16:48 FAX 202 273 0479        ADMIN/SERVICE                        ☐006
MAR-24-1997  13:34        JUDGE WEINER                                  P.01/03

Court or the United States Court of Appeals for the District of
Columbia Circuit, if such action is contrary to the provisions of
the Rail Act or an order of this court.   45 U.S.C. § 719(g).
Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the
> special court [now the District Court for the
> District of Columbia] shall include any action
> . . . to interpret, alter, amend, modify, or
> implement any of the orders entered by such
> court . . . in order to effect the purposes of
> this chapter or the goals of the final system
> plan.

45 U.S.C. § 719(e)(2).   Conrail avers that this court is the
exclusive forum to adjudicate the successor liability issue since
it involves interpretation of our prior conveyance order and the
conveyancing documents executed in accordance with the final system
plan.

    Conrail is correct when it asserts that this court is the
final arbiter of the correct interpretation of the conveyance
documents, the FSP and our own conveyance order.  See Penn Central
Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994).
Further, the defendants' arguments that a stay would waste judicial
resources, since the primary claims in the underlying action do not
implicate the Rail Act, is inapposite:  if any claim sought to be
asserted in the court of common pleas comes within the ambit of
this court's exclusive jurisdiction, any adjudication there would
be a nullity.  The question we must decide is how far our exclusive
jurisdiction extends.

    It is beyond peradventure that, to the extent liability
is premised upon successor liability, it is governed by this

5

03/24/97  MON 16:48 FAX 202 273 0479     ADMIN/SERVICE                     007
    MAR-24-1997  13:35        JUDGE WEINER                           P.02/03

court's conveyance order, or the conveyance documents, and is within our jurisdiction.  While both sides point to our decisions in Penn Central v. United States, supra and Consolidated Rail Corp. v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as support for their jurisdictional arguments, we find this action is far more simple than the situations presented there.  In both Penn Central and Consolidated Rail, we were faced with the interplay of the Rail Act and a second statutory scheme, the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act, 42 U.S.C. §9601, et seq.  Finding that, in enacting CERCLA, Congress intended its liability provisions to apply notwithstanding any other provision of law, we concluded that CERCLA was an exception to the fresh start policy embodied in the Rail Act.  While we refused to completely exonerate Conrail from post-conveyance CERCLA liability, we reconciled the two statutory schemes by making clear that pursuant to the Rail Act, liability for pre-conveyance environmental contamination belonged to Penn Central and not Conrail.

Here, there is no other counterbalancing statutory scheme at issue.  As we read the underlying pleadings, liability is premised upon common law contract and tort theories, seeking, inter alia, to hold Conrail responsible as corporate successor for Penn Central's acts and omissions.  The fresh start policy embodied in the Rail Act, and incorporated into the conveyancing documents, creates a bright line date upon which the liability of Penn Central ended and the liability of Conrail began.  Congress mandated that

6

03/24/97  MON 16:49 FAX 202 273 0479          ADMIN/SERVICE                    ☐008
MAR-24-1997  13:35          JUDGE WEINER                              P.03/03

there be no successor liability hindering the future financial well being of the newly created Conrail.  Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished.  However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it.  As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

7

03/24/97 MON 16:49 FAX 202 273 0479    ADMIN/SERVICE    ☒009

MAR-24-1997 12:00    JUDGE WEINER    P.08/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


CONSOLIDATED RAIL CORPORATION    :
                                 :
                                 :
                                 :
                                 :    Special Court
            v.                   :    Regional Rail Act
                                 :.   C.A. NO. 97-RR-01
                                 :
                                 :
COMMONWEALTH OF PENNSYLVANIA      :
DEPARTMENT OF GENERAL SERVICES    :    **FILED**
and THE FRANK BRISCOE CO., INC.  :
                                      MAR 24 1997

<u>JUDGMENT ORDER</u>    NANCY MAYER-WHITTINGTON, CLERK
                        U.S. DISTRICT COURT

The motion to dismiss defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc. is DENIED.

The motion of plaintiff Consolidated Rail Corporation to stay is GRANTED.

Judgment on the merits is ENTERED in favor of plaintiff Consolidated Rail Corporation and against defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc.

The court DECLARES that pursuant to the conveyance orders issued by this court and the conveyance documents executed thereunder, there is no successor liability of Consolidated Rail Corporation for the acts and omissions of the Penn Central Transportation Company for the period prior to April 1, 1976 as asserted in the pleadings filed in the consolidated actions

8

03/24/97  MON 16:49 FAX 202 273 0479        ADMIN/SERVICE                    @010

MAR-24-1997  12:01        JUDGE WEINER                                P.09/09

captioned <u>Commonwealth of Pennsylvania, Department of General Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associates, P.C., et al.</u>, Civil Action Number 1806-S-1986 in the Court of Common Pleas of Dauphin County, Pennsylvania.

IT IS SO ORDERED.

_Charles R Weiner_

_____
CHARLES R. WEINER

9

**CIVIL COVER SHEET**

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Consolidated Rail Corporation | John M. Gribbin |

| (b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT    88888<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |
|---|---|

| (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Charles Carpenter<br>Pepper Hamilton LLP<br>600 14th Street, N.W., Suite 500<br>Washington, D.C. 20005-2004<br>(202) 220-1200 | Michael J. Olley<br>Coffey Kaye Myers & Olley<br>Two Bala Plaza, Suite 718<br>Bala CynwydPA 19004<br>610-668-9800 |

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
● 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) **FOR DIVERSITY CASES ONLY!**

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**

□ 410 Antitrust

○ **B. Personal Injury/ Malpractice**

□ 310 Airplane
□ 315 Airplane Product Liability
□ 320 Assault, Libel & Slander
□ 330 Federal Employers Liability
□ 340 Marine
□ 345 Marine Product Liability
□ 350 Motor Vehicle
□ 355 Motor Vehicle Product Liability
□ 360 Other Personal Injury
□ 362 Medical Malpractice
□ 365 Product Liability
□ 368 Asbestos Product Liability

○ **C. Administrative Agency Review**

□ 151 Medicare Act

Social Security:
□ 861 HIA ((1395ff)
□ 862 Black Lung (923)
□ 863 DIWC/DIWW (405(g)
□ 864 SSID Title XVI
□ 865 RSI (405(g)
Other Statutes
□ 891 Agricultural Acts
□ 892 Economic Stabilization Act
□ 893 Environmental Matters
□ 894 Energy Allocation Act
□ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

⊙ **E. General Civil (Other)**      OR      ○ **F. Pro Se General Civil**

**Real Property**
□ 210 Land Condemnation
□ 220 Foreclosure
□ 230 Rent, Lease & Ejectment
□ 240 Torts to Land
□ 245 Tort Product Liability
□ 290 All Other Real Property

**Personal Property**
□ 370 Other Fraud
□ 371 Truth in Lending
□ 380 Other Personal Property Damage
□ 385 Property Damage Product Liability

**Bankruptcy**
□ 422 Appeal 28 USC 158
□ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
□ 535 Death Penalty
□ 540 Mandamus & Other
□ 550 Civil Rights
□ 555 Prison Condition

**Property Rights**
□ 820 Copyrights
□ 830 Patent
□ 840 Trademark

**Federal Tax Suits**
□ 870 Taxes (US plaintiff or defendant
□ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
□ 610 Agriculture
□ 620 Other Food &Drug
□ 625 Drug Related Seizure of Property 21 USC 881
□ 630 Liquor Laws
□ 640 RR & Truck
□ 650 Airline Regs
□ 660 Occupational Safety/Health
□ 690 Other

**Other Statutes**
□ 400 State Reapportionment
□ 430 Banks & Banking
□ 450 Commerce/ICC Rates/etc.
□ 460 Deportation

□ 470 Racketeer Influenced & Corrupt Organizations
□ 480 Consumer Credit
□ 490 Cable/Satellite TV
□ 810 Selective Service
□ 850 Securities/Commodities/ Exchange
□ 875 Customer Challenge 12 USC 3410
□ 900 Appeal of fee determination under equal access to Justice
□ 950 Constitutionality of State Statutes
☒ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ **G. _Habeas Corpus/_** **_2255_** | ○ **H. _Employment_** **_Discrimination_** | ○ **I. _FOIA/PRIVACY_** **_ACT_** | ○ **J. _Student Loan_** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| ○ **K. _Labor/ERISA_** **_(non-employment)_** | ○ **L. _Other Civil Rights_** **_(non-employment)_** | ○ **M. _Contract_** | ○ **N. _Three-Judge Court_** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

☑ 1 Original
Proceeding
○ 2 Removed
from State
Court
○ 3 Remanded from
Appellate Court
○ 4 Reinstated
or Reopened
○ 5 Transferred from
another district
(specify)
○ 6 Multi district
Litigation
○ 7 Appeal to
District Judge
from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
45 USC § 1701 et seq.; invoking special court jurisdiction under Reg. Rail Reorg. Act of 1973

**VII. REQUESTED IN**
**COMPLAINT**
☐ CHECK IF THIS IS A CLASS
ACTION UNDER F.R.C.P. 23
DEMAND $
JURY DEMAND:
Check YES only if demanded in complaint
YES ☐ NO ☐

**VIII. RELATED CASE(S)**
**IF ANY**
(See instruction) YES ☒ NO ☐ If yes, please complete related case form.

DATE 7/27/07  SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The **JS-44** civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.