IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONSOLIDATED RAIL CORPORATION** : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 07- |
| : | |
| **JOHN M. GRIBBIN** : | |
| : | |
| Defendant : | |
| : | |

## MOTION OF CONSOLIDATED RAIL CORPORATION FOR A STAY OF PROCEEDINGS PENDING IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA

Plaintiff, Consolidated Rail Corporation ("Conrail") by its attorneys, Pepper Hamilton LLP, pursuant to Section 209(g) of the Regional Rail Reorganization Act of 1973, 45 U.S.C. § 719(g), moves for a stay of Philadelphia County, Pennsylvania Court of Common Pleas proceedings in *Gribbin v. Consolidated Rail Corp.*, June Term 2007-002320, to the extent the court is seeking to impose liability on Conrail for actions of an unnamed predecessor of Conrail prior to April 1, 1976, the date on which Conrail began operations pursuant to the Rail Act, 45 U.S.C. § 701, *et seq.* In support of this Motion, Conrail respectfully refers this Court to the supporting brief filed herewith.

WHEREFORE, Conrail respectfully requests that this Court grant this Motion and enter an order partially staying the Pennsylvania proceedings.

Respectfully, Submitted,

Of Counsel:

Laurence Z. Shiekman
Ken Massey
T. Joel Zuercher
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles H. Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC 20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665

Attorneys for Plaintiff,
Consolidated Rail Corporation

July 27, 2007

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSOLIDATED RAIL CORPORATION : | |
| : | |
| Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 07- |
| : | |
| JOHN M. GRIBBIN : | |
| : | |
| Defendant : | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF CONSOLIDATED RAIL
CORPORATION FOR A STAY OF PROCEEDINGS PENDING IN THE COURT OF
COMMON PLEAS OF PHILADELPHIA COUNTY, PENNSYLVANIA**

I.   **INTRODUCTION**

      Plaintiff Consolidated Rail Corporation ("Conrail") seeks a stay of proceedings pending in the Philadelphia County, Pennsylvania Court of Common Pleas in *Gribbin v. Consolidated Rail Corp.*, June Term 2007-002320, (hereinafter the "Pennsylvania Action"). The Plaintiff in the Pennsylvania Action filed a complaint against Conrail hinging on an effort to impose liability on Conrail as a corporate successor to an alleged railroad predecessor of Conrail's ("Alleged Predecessor")[1], for the acts of Alleged Predecessor prior to the April 1, 1976 transfer of assets from Alleged Predecessor to Conrail. That asset transfer was made pursuant to

---

[1] Defendant does not name the predecessor in any averment in the Pennsylvania complaint. The complaint is filed against "Consolidated Rail Corporation, A Pennsylvania Corporation, individually and as successor-in-interest to the Delaware, Lackawanna & Western Railroad".

Section 303(b)(2), 45 U.S.C. § 743(b)(2), of the Regional Rail Reorganization Act of 1973 ("Rail Act", 45 U.S.C. § 701, *et seq.*). The central issue raised in the Pennsylvania complaint thus requires an interpretation of this Court's conveyance orders implementing the Rail Act, Section 303(b)(2). Such an interpretation falls under the original and exclusive jurisdiction of the United States District Court for the District of Columbia pursuant to Section 209(e) of the Rail Act, exercising the powers of the Special Court. Accordingly, consistent with past practice, the Court should exercise the authority granted to it by Section 209(g) of the Rail Act and grant Conrail's motion for a stay of the Pennsylvania Action to the extent the state court may seek to impose on Conrail liability for the actions of Alleged Predecessor occurring prior to the April 1, 1976 conveyance.

## II.     STATEMENT OF FACTS

On or around June 20, 2007, John M. Gribbin (hereinafter "Defendant") filed a Complaint in the Philadelphia County, Pennsylvania Court of Common Pleas against Conrail, alleging that during the course of his employment with Alleged Predecessor he was negligently exposed to asbestos in violation of the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.* (hereinafter "FELA") and the Federal Boiler Inspection Act, 49 U.S.C. § 20701, *et seq.* (hereinafter "FBIA").

Defendant alleges that he was employed by Alleged Predecessor from 1941 until 1943 and from 1946 until 1949. There is no evidence that Defendant was exposed to asbestos during this period. More importantly, Conrail never employed Defendant and therefore could not have exposed Defendant to asbestos. Thus, Defendant's sole claim in the Pennsylvania Action is based on the erroneous notion that Conrail is the successor-in-interest to Alleged Predecessor (Delaware Lackawanna and Western Railroad, according to his caption), and is therefore liable for injuries suffered during Defendant's employment with Alleged Predecessor.

Pursuant to Sections 301 and 303(b)(2) of the Rail Act, on April 1, 1976, assets belonging to various bankrupt railroads were conveyed to the newly formed Consolidated Rail Corporation. 45 U.S.C. §§ 741, 743(b)(2). Section 303(b)(2) of the Rail Act, reflecting Congressional intent to prevent successor liability from hindering Conrail future's financial well-being, provided that the assets of bankrupt railroads were to be transferred to Conrail "free and clear of any liens and encumbrances, except certain types of leases." 45 U.S.C. §§ 743(b)(2). Erie Lackawanna, the successor of Delaware Lackawanna and Western Railroad, filed for bankruptcy in June of 1972, ceased all rail operations on April 1, 1976 and conveyed the bulk of its rail properties to Conrail at that time. *See In re Erie Lackawanna Railway Co.*, 803 F.2d 881, 882 (3d Cir, 1986). Erie Lackawanna remained in reorganization until November 30, 1982, when it was discharged from bankruptcy as Erie Lackawanna, Inc. only so that it might "liquidate its remaining assets as expeditiously as possible." *Id.*

For the reasons set forth below, the Pennsylvania Action must be stayed insofar as that court may seek to impose liability on Conrail for exposure alleged to have occurred during the Defendant's employ with Alleged Predecessor.

## III. ARGUMENT

Under Rail Act Section 209(b), Congress created a Special Court generally to interpret its conveyance orders and to determine delineated claims under the provisions of the Rail Act. 45 U.S.C. § 719(b)(1). Congress subsequently abolished the Special Court and, effective January 17, 1997, transferred all jurisdiction and other functions of the Special Court to the United States District Court for the District of Columbia. 45 U.S.C. § 719(b)(2).

This Court has the "original and exclusive jurisdiction" over "any action, whether filed by an interested person or initiated by the special court itself, to *interpret*, alter, amend, modify or implement any of the orders entered by such court pursuant to [Section 303(b)]." 45

U.S.C. §§ 719(e)(2) (emphasis added). As noted above, Section 303(b)(2) of the Rail Act provides for the transfer of bankrupt railroad assets to Conrail "free and clear of any liens and encumbrances." 45 U.S.C. §§ 743(b)(2). As also noted above, Erie Lackawanna's assets were transferred to Conrail in 1976 pursuant to the Special Court's Section 303(b)(2) Order. In addition, pursuant to Section 209(g) of the Rail Act, the Court may "stay or enjoin any action or proceeding in any state court . . . if such action or proceeding is contrary to any provision of [the Rail Act], impairs the effective implementation of [the Rail Act], or interferes with the execution of any order of the special court pursuant to [the Rail Act]." 45 U.S.C. § 719(g).

Defendant's sole claim against Conrail in the Pennsylvania Action is presumably based on the notion that Conrail is a successor-in-interest to Erie Lackawanna and Delaware Lackawanna and Western Railroad, and thereby liable for Defendant's injuries. Conrail vigorously disputes the Defendant's position, but for the purposes of this motion it is relevant only that the Defendant's argument necessarily turns on an interpretation of the Special Court's Section 303(b)(2) Order, bringing the Defendant's claim within the original and exclusive jurisdiction of this Court.[2]

The Court should exercise its discretion and grant Conrail's motion for a stay of the Pennsylvania Action for the following reasons. First, Rail Act Section 209(e) grants "exclusive" jurisdiction to the Court to determine the scope and meaning of the Special Court's conveyance orders; thus this is the only Court that may hear this matter. 45 U.S.C. § 719(e) and

---

[2] The decision of the Special Court in *Consolidated Rail Corp. v. Reading Co.*, 645 F. Supp. 1318, 1324-25 (S.C.R.R.R.A. 1987), is distinguishable. In *Reading*, Conrail sought a broad declaratory order seeking an interpretation of 45 U.S.C. §797(b) and to preempt "any attempt to pin [successorship] liability on Conrail under any theory of tort law." *Reading*, at 1323. The Special Court refused, holding such relief did not "fit squarely within our . . . jurisdiction." *Reading*, at 1323. Here, unlike *Reading*, the decedent's claim against Conrail is fully ripe and turns on this Court's Section 303(b)(2) conveyance order. Moreover, one of the issues presented here, whether the claim arose prior to the April 1, 1976 conveyance date, was not before the Court in *Reading*.

§ 719(g). Second, this Court has previously stayed actions against Conrail based upon questions of successor liability in order to exercise its original and exclusive jurisdiction over such matters under the Rail Act. *See Consolidated Rail Corp. v. Commonwealth of Pa. Dep't of Gen. Servs.*, No. 97-RR-01, slip op. at 2 (S.C.R.R.R.A. Mar. 24, 1997), attached hereto as Exhibit A.

## IV. CONCLUSION

For the above-stated reasons, Conrail respectfully requests that this Court grant this Motion and enter an order staying the Pennsylvania Action.

Of Counsel:

Laurence Z. Shiekman
Ken Massey
T. Joel Zuercher
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103-2799
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles H. Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC  20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665
carpenterc@pepperlaw.com

Attorneys for Plaintiff,
Consolidated Rail Corporation

July 27, 2007

# EXHIBIT A

03/24/97 MON 16:47 FAX 202 273 0479    ADMIN/SERVICE                              ☒002
MAR-24-1997 11:56         JUDGE WEINER                                           P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION     :
                                  :
                                  :
                                  :
              v.                  :    Special Court
                                  :    Regional Rail Act
                                  :    C.A. NO. 97-RR-01[1]
                                  :
COMMONWEALTH OF PENNSYLVANIA      :
DEPARTMENT OF GENERAL SERVICES    :
and THE FRANK BRISCOE CO., INC.   :
                                                            **FILED**

WEINER, J.[2]                           March 24, 1997  MAR 24 1997

                                                    NANCY MAYER-WHITTINGTON, CLERK
                                                        U.S. DISTRICT COURT
**MEMORANDUM OPINION AND ORDER**

Consolidated Rail Corporation (Conrail) brought this action for declaratory relief against the Commonwealth of Pennsylvania Department of General Services (DGS) and The Frank Briscoe Company, Inc. (Briscoe), seeking a partial stay of proceedings in the Court of Common Pleas of Dauphin County. Conrail seeks a declaration that the subject matter of the underlying suit is partly within the exclusive jurisdiction of this court[3], and that

---

[1]The Special Court, Regional Rail Reorganization Act of 1973 was abolished by Congress effective January 17, 1997, and its original jurisdiction transferred to the United States District Court for the District of Columbia.

[2]United States District Judge for the Eastern District of Pennsylvania, and Judge of the Special Court, Regional Rail Reorganization Act, sitting by designation.

[3]"This court" as used herein is intended to refer to the United States District Court for the District of Columbia, exercising the exclusive jurisdiction of the Special Court.

03/24/97 MON 16:47 FAX 202 273 0479    ADMIN/SERVICE                            ☒003
MAR-24-1997 11:57         JUDGE WEINER                                        P.02/09

it has no liability as a successor or assignee of the Penn Central Corporation. Also before the court is a motion by the defendants to dismiss. This matter was heard on an expedited basis since the Dauphin County action is scheduled for imminent trial.[4] For the reasons which follow, Conrail's motion for a partial stay of the Dauphin County action is granted, the defendants' motion to dismiss is denied and final declaratory judgment is entered in favor of Conrail and against the defendants.

      Our jurisdiction is asserted under Section 209(e)(2) of the Rail Act, 45 U.S.C. § 719(e)(2). This action arises out of the construction of the Pittsburgh Exposition and Convention Center. On July 1, 1975, the trustees of the Penn Central Corporation transferred title to the land underlying the site of the Convention Center to DGS by a deed. At the time of the conveyance, Conrail was not yet in existence and hence had no interest in the property. By Conveyance Order issued by this court on March 25, 1976, we directed Penn Central to execute a deed effective April 1, 1976, conveying certain of Penn Central's rail properties to Conrail. Under Section 303(b)(2) of the Rail Act, such conveyance was to be made "free and clear of any liens or encumbrances" consistent with the Final System Plan proposed by the United States Rail Association. The conveyance included all of Penn Central's remaining interests in the land underlying the Convention Center. Since Penn Central had already conveyed the land to DGS, the April 1, 1976

---

[4] The parties have now also agreed to have the court enter a final decision on the merits, as well as the motion for partial stay.

2

conveyance in effect transferred Penn Central's remaining rights of way, transportation easements and other easements. Both the deed and the accompanying bill of sale contained language limiting Conrail's liability for obligations accruing prior to the date of delivery of the deed.[5]

The Convention Center was completed in August 1981, nearly two years behind schedule. Briscoe, who served as general contractor on the project, along with DGS have commenced two civil actions seeking to recover damages allegedly attributable to the delay in construction. They brought a joint action in Dauphin County in June 1986 naming thirteen defendants. Conrail was not joined. Rather, Conrail became a party some two years later when it was named in a third party complaint filed by the Peter F.

---

[5]The deed provided:
> . . . the Grantee (Conrail) assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto and, where an obligation or liability is related to a period which is both before and after such date, the Grantee assumes only that portion of the obligation or liability which is reasonably allocable to the part of the period after such sale.

Schedule E to the Bill of Sale provided:
> Grantee assumes the foregoing contracts and obligation to perform and observe all covenants and conditions therein contained on the part of Grantor (Penn Central) to be performed and observed after the date of delivery hereof . . . Grantee assumes no liabilities or obligations of any kind which have accrued prior to the date of delivery hereof or which thereafter arise out of any event, act or failure to act which occurred prior thereto in connection with the foregoing contracts or any property which is the subject thereof.

3

03/24/97 MON 16:48 FAX 202 273 0479    ADMIN/SERVICE    ☑005
MAR-24-1997 11:58    JUDGE WEINER    P.04/09

Loftus Division of Eichleay Engineering (Loftus). DGS filed a second action in 1989 in which it named eight defendants; again Conrail was not one of them. It was again joined by Loftus. In 1995, the two actions were consolidated for trial.

The claims against Conrail arise out of the undisclosed presence of an underground electrical ductbank, which was struck by construction workers driving piles for the new Convention Center. The ductbank was struck after Penn Central had conveyed the land to DGS, and after its remaining interests were conveyed to Conrail. The claims against Conrail seek to hold it liable both as a successor to Penn Central, as well as for independent, post-conveyance acts of its agents who were on site during the construction. Successor liability is premised upon Penn Central's pre-conveyance statements to DGS that all utilities had been abandoned, Penn Central's failure to de-energize and relocate the power line, and its failure to include the power line on construction drawings. Direct liability is premised upon Conrail's unreasonable delay in moving the power line after its accidental discovery, as well as the fact that its on site agent failed to warn of the existence of the power line.

Reduced to its essence, Conrail argues that since the successor liability issues presented in the Dauphin County action are within the exclusive jurisdiction of this court, the Dauphin County action must be stayed. Pursuant to Section 209(g) of the Rail Act, this court may stay or enjoin any action or proceeding in any state or federal court, other than the United States Supreme

4

03/24/97 MON 16:48 FAX 202 273 0479       ADMIN/SERVICE                    ☐006
MAR-24-1997 13:34          JUDGE WEINER                           P.01/03

Court or the United States Court of Appeals for the District of Columbia Circuit, if such action is contrary to the provisions of the Rail Act or an order of this court. 45 U.S.C. § 719(g). Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the special court [now the District Court for the District of Columbia] shall include any action . . . to interpret, alter, amend, modify, or implement any of the orders entered by such court . . . in order to effect the purposes of this chapter or the goals of the final system plan.

45 U.S.C. § 719(e)(2). Conrail avers that this court is the exclusive forum to adjudicate the successor liability issue since it involves interpretation of our prior conveyance order and the conveyancing documents executed in accordance with the final system plan.

Conrail is correct when it asserts that this court is the final arbiter of the correct interpretation of the conveyance documents, the FSP and our own conveyance order. See Penn Central Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994). Further, the defendants' arguments that a stay would waste judicial resources, since the primary claims in the underlying action do not implicate the Rail Act, is inapposite: if any claim sought to be asserted in the court of common pleas comes within the ambit of this court's exclusive jurisdiction, any adjudication there would be a nullity. The question we must decide is how far our exclusive jurisdiction extends.

It is beyond peradventure that, to the extent liability is premised upon successor liability, it is governed by this

5

03/24/97 MON 16:48 FAX 202 273 0479    ADMIN/SERVICE    ☒007
MAR-24-1997 13:35    JUDGE WEINER    P.02/03

court's conveyance order, or the conveyance documents; and is within our jurisdiction. While both sides point to our decisions in Penn Central v. United States, supra and Consolidated Rail Corp. v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as support for their jurisdictional arguments, we find this action is far more simple than the situations presented there. In both Penn Central and Consolidated Rail, we were faced with the interplay of the Rail Act and a second statutory scheme, the Comprehensive Environmental Response, Compensation and Liability Act, as amended by the Superfund Amendments and Reauthorization Act, 42 U.S.C. §9601, et seq. Finding that, in enacting CERCLA, Congress intended its liability provisions to apply notwithstanding any other provision of law, we concluded that CERCLA was an exception to the fresh start policy embodied in the Rail Act. While we refused to completely exonerate Conrail from post-conveyance CERCLA liability, we reconciled the two statutory schemes by making clear that pursuant to the Rail Act, liability for pre-conveyance environmental contamination belonged to Penn Central and not Conrail.

Here, there is no other counterbalancing statutory scheme at issue. As we read the underlying pleadings, liability is premised upon common law contract and tort theories, seeking, inter alia, to hold Conrail responsible as corporate successor for Penn Central's acts and omissions. The fresh start policy embodied in the Rail Act, and incorporated into the conveyancing documents, creates a bright line date upon which the liability of Penn Central ended and the liability of Conrail began. Congress mandated that

6

03/24/97 MON 16:49 FAX 202 273 0479      ADMIN/SERVICE                              ☒008
MAR-24-1997 13:35        JUDGE WEINER                                        P.03/03

there be no successor liability hindering the future financial well being of the newly created Conrail. Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished. However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it. As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

TOTAL P.03

captioned <u>Commonwealth of Pennsylvania, Department of General Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associates, P.C., et al.</u>, Civil Action Number 1806-S-1986 in the Court of Common Pleas of Dauphin County, Pennsylvania.

IT IS SO ORDERED.

_____
CHARLES R. WEINER

9

03/24/97 MON 16:49 FAX 202 273 0479        ADMIN/SERVICE                              ☒009
MAR-24-1997  12:00      JUDGE WEINER                                              P.08/09

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION       :
                                    :
                                    :
        v.                          :      Special Court
                                    :      Regional Rail Act
                                    :      C.A. NO. 97-RR-01
                                    :
COMMONWEALTH OF PENNSYLVANIA        :
DEPARTMENT OF GENERAL SERVICES      :           FILED
and THE FRANK BRISCOE CO., INC.     :
                                                MAR 24 1997

### JUDGMENT ORDER

NANCY MAYER-WHITTINGTON, CLERK
U.S. DISTRICT COURT

The motion to dismiss defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc. is DENIED.

The motion of plaintiff Consolidated Rail Corporation to stay is GRANTED.

Judgment on the merits is ENTERED in favor of plaintiff Consolidated Rail Corporation and against defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc.

The court DECLARES that pursuant to the conveyance orders issued by this court and the conveyance documents executed thereunder, there is no successor liability of Consolidated Rail Corporation for the acts and omissions of the Penn Central Transportation Company for the period prior to April 1, 1976 as asserted in the pleadings filed in the consolidated actions

8

| | |
|---|---|
| CONSOLIDATED RAIL CORPORATION,<br><br>    Plaintiff,<br><br>v.<br><br>JOHN M. GRIBBIN,<br><br>    Defendant. | :<br>:<br>:<br>: UNITED STATES DISTRICT<br>: COURT FOR THE<br>: DISTRICT OF COLUMBIA<br>:<br>:<br>:<br>: Civil Action No.: 07-<br>:<br>:<br>: |

## ORDER

AND NOW, this _____ day of _____, 2007, upon consideration of the aforementioned Plaintiff's Brief in Support of Plaintiff's Motion for a Partial Stay of Proceedings Pending in the Court of Common Pleas of Philadelphia County, Pennsylvania, it is hereby ORDERED that Plaintiff's Motion for a Partial Stay of Proceedings is GRANTED.

                By the Court:

                _____

                            J.