IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **CONSOLIDATED RAIL CORPORATION** | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 07-01371 |
| | : | |
| **JOHN M. GRIBBIN** | : | |
| | : | |
| Defendant | : | |
| | : | |
| | : | |

**MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS
THE COMPLAINT OF CONSOLIDATED RAIL CORPORATION**

## I.     INTRODUCTION

This Court on multiple occasions has held that Plaintiff Consolidated Rail

Corporation ("Conrail"), under the express terms of the Regional Rail Reorganization Act

of 1973, 45 U.S.C. § 701 *et seq,* ("Rail Act"), cannot be held liable as a successor in

interest for actions of a predecessor railroad occurring prior to the April 1, 1976

conveyance of the predecessors' assets to Conrail.  The Court has further held, again on

multiple occasions, that it has original and exclusive jurisdiction under Section 209(e)(2),

45 U.S.C. § 719(e)(2), of the Rail Act to decide claims of pre-conveyance successor

liability against Conrail and to stay state court actions while doing so.  The defendant

here is plaintiff in a state court action seeking to impose improper successor liability on

Conrail.  The defendant has filed a motion to dismiss Conrail's complaint  based entirely

on an incorrect and expansive reading of one prior decision of this Court. For the reasons explained below, the Defendant's motion to dismiss should be denied.

## II.    BACKGROUND

Conrail has filed a complaint for a declaratory judgment, requesting that this Court enter an order declaring that Conrail, under the Rail Act, the Final System Plan and this Court's conveyance order effective April 1, 1976, has no liability as a successor in liability to the Erie Lackawanna Railroad Company (hereinafter "Erie Lackawanna"). Conrail has further requested that this Court enjoin the aforementioned defendants from seeking to hold Conrail liable for any acts or omissions of Erie Lackawanna prior to the April 1, 1976 conveyance of Erie Lackawanna's assets to Conrail pursuant to Section 303 of the Rail Act, 45 U.S.C. § 743. Conrail finally has requested that this Court grant a partial stay of the proceedings pending in the Philadelphia County, Pennsylvania Court of Common Pleas in *Gribbin v. Consolidated Rail Corp.*, June Term 2007-002320 (hereinafter the "Pennsylvania Action"), to the extent that court may seek to enter orders within the exclusive jurisdiction of this Court and which would be contrary to the Rail Act's conveyance scheme.

John M. Gribbin, a resident of Virginia, defendant here and plaintiff in the Pennsylvania Action (hereinafter "defendant"), has filed a motion to dismiss Conrail's complaint. The defendant's motion to dismiss is based mainly on an incorrect and expansive reading of the prior decision of a panel of this Court in *Consolidated Rail Corp. v. Reading Co.*, 654 F. Supp. 1318 (S.C.R.R.R.A. 1987), exercising jurisdiction

under Section 1152 of the Northeast Rail Services Act ("NRSA"), 45 U.S.C. § 1152.[1] The defendant has misread this Court's narrow holding in *Reading* in an attempt to encompass the instant situation. Despite Defendant's efforts, *Reading* does not control here. Further, the plain language of the Rail Act clearly gives this Court jurisdiction over this matter, and previous decisions of this Court have shielded Conrail from successor liability in situations analogous to those present here.

For now, granting the relief Conrail requests requires this Court to stay the Pennsylvania Action and to deny the motion to dismiss. Thereafter, the Court will be in a position to address the merits. In that connection, Conrail acknowledges that generally federal courts should be hesitant to interfere with state court personal injury litigation. Conrail's request for a stay, however, would not relieve Conrail of any *direct* liability. That is, assuming Mr. Gribbin can satisfy the other requisites for FELA liability, Conrail does not claim that the Rail Act conveyance structure insulates Conrail from liability to Mr. Gribbin based on Conrail's own actions after the April 1, 1976 conveyance of Erie Lackawanna's rail properties to Conrail. Indeed, Section 209(g) of the Rail Act, 45 U.S.C. § 719(g), expressly authorizes that result.[2] Conrail, however, pursuant to the express terms of the Rail Act, simply cannot be held liable as a successor in interest for the acts or omissions of Erie Lackawanna based on Erie's actions prior to the April 1, 1976 conveyance date.

---

[1] The Special Court has two sources of jurisdiction: Section 209(e)(2) of the Rail, 45 U.S.C. § 719(e)(2) and Section 1152 of NRSA, 45 U.S.C. § 1152 . In *Reading*, the Court acted solely under § 1152(a)(1) and thus exercised limited jurisdiction to decide an extremely narrow issue.

[2] Section 209(g) of the Rail Act authorizes a stay of proceedings in any state or federal court only if such proceedings run "contrary to any provision of this chapter, impair[ ] the effective implementation of this chapter, or interfere[ ] with the execution of any order of the special court pursuant to this chapter." 45 U.S.C. § 719(g).

-3-

III.    *READING* IS INAPPLICABLE TO THE INSTANT MATTER

The defendants have based their motion to dismiss Conrail's complaint entirely on an inaccurate and expansive interpretation of *Reading*. The defendant, in his motion to dismiss Conrail's complaint, claims that in *Reading*, this Court "decided that the Rail Act does not govern personal injury claims against Conrail filed by former employees of the predecessor railroads for latent injuries sustained prior to the creation of Conrail." That is simply not what this Court either decided or held in *Reading*.

In *Reading*, as here, Conrail was involved in litigation with several employees who had been exposed to asbestos while employed by railroads whose assets had been conveyed to Conrail, and who were attempting to recover from Conrail. *Reading,* 654 F. Supp. at 1321. Conrail attempted to preclude all future litigation over successor liability by arguing in *Reading* that the language of Section 709(b) of the Rail Act, 45 U.S.C. § 797h(b), which has since been repealed[3], precluded any finding of liability against Conrail stemming from any pre-conveyance incident whatsoever. Conrail urged this Court to find that because Section 709(b) set up a system to reimburse Conrail for employee claims, once the authorized funding had been exhausted, Congress must have envisioned Section 709(b) "as a preemptive strike against any attempt to pin liability on Conrail under any theory of tort law." *Id.*, at 1323.

---

[3] Section 709(b), 45 U.S.C. § 797h(b), was repealed in 1986. It formerly provided a procedure for employees of railroads who had gone into bankruptcy and were in the process of conveying assets to Conrail to recover for valid personal injury claims. Under 709(b), employees of "railroad[s] in reorganization" with a "case or claim" arising "prior to the date of conveyance of rail properties" were entitled to have their claims processed and paid by Conrail. 45 U.S.C. § 709(b). Conrail, though, did not assume any liability under 709(b) because it was then fully reimbursed for the cost of such claims from a fund set up by Congress. 45 U.S.C. § 797h(b). The Rail Act defined a "railroad in reorganization" as a "railroad subject to a bankruptcy proceeding." 45 U.S.C. § 717(b). Thus 709(b) outlived its usefulness and was repealed once the predecessor railroads completed their bankruptcy proceedings and were statutorily no longer in "reorganization."

The Section 1152 Panel of this Court, in deciding *Reading*, both defined the limited question before it and crafted a narrow holding. The Court stated the question before it simply as "whether [Section 709(b)] of the Act furnishe[s] grounds for recovery of damages against Conrail . . ., or instead erects a permanent barrier against them." *Id.* In answering that question, this Court concluded only that, "[Section 709(b)] is neither a sword for the employee claimants nor a shield for Conrail . . . . We therefore hold that: (1) [Section 709(b)] affords no separate basis for recovery of civil damages by the employee claimants; and (2) [Section 709(b)] has no preemptive effect on these cases." *Id.*, at 1333. In other words, the Section 1152 Panel of this Court crafted a limited and specific holding that never reached the broader question of whether successor liability is precluded by the Rail Act, this Court's conveyance order and the Final System Plan. Rather, the Court held that the plaintiffs could not recover against Conrail using a successor liability theory under 709(b), and disagreed with Conrail only to the extent that it would not read 709(b) to grant complete preemption of liability under any theory of tort law.[4]

Thus *Reading* has no applicability to the instant matter because it dealt solely with a provision of law no longer in effect. Further, *Reading* neither touches upon any other provisions of the Rail Act other than repealed Section 709(b), nor does it

---

[4] The subsequent case of *Lower Lake Erie Iron Ore Antitrust Litig.*, 710 F. Supp. 152 (E.D. Pa. 1989), demonstrates why this Court hesitated in *Reading* to erect a permanent barrier against *any* pre-conveyance liability. In *Lower Lake Erie*, the district court reaffirmed the general rule against successor liability for Conrail, but held that Conrail could be found liable for both pre- and post-conveyance conduct when it continued to engage in an antitrust conspiracy post-conveyance which had begun pre-conveyance. *Id.*, at 154-155. Conrail remained potentially liable for pre-conveyance activity only because the Rail Act contains a specific antitrust exception codified at 45 U.S.C. § 791(a). *Id.* Thus the hesitation to erect a permanent barrier against any pre-conveyance liability, because in the antitrust context limited pre-conveyance liability may exist.

contravene the other decisions of this Court, fully discussed in Section IV.B, *infra*, holding that successor liability is preempted under the Rail Act as a whole, this Court's conveyance orders, and the Final System Plan.

*Reading* is also inapplicable to the instant matter because this Court in *Reading* was operating solely under jurisdiction conferred by Section 1152(a)(1), 45 U.S.C. § 1152(a)(1). Section 1152(a)(1) is a provision of the Northeast Rail Service Act of 1981 ("NRSA") which grants jurisdiction to this Court only to determine questions "significantly affecting implementation of NRSA." *Id.*, at 1324 (citation omitted). In the instant matter, as fully discussed in Section IV, *infra*, jurisdiction is conferred by Sections 209(e) and 209(g) of the Rail Act.

## IV.    THIS COURT PROPERLY HAS JURISDICTION OVER THE INSTANT MATTER

The actual question now before this Court is one of jurisdiction. Despite the defendant's efforts, discussed above, *Reading* does not control the instant matter. The defendant also argues that *Reading* somehow precludes this Court exercising Section 209(e) jurisdiction in the instant matter, which it clearly does not. While the Court in *Reading* was exercising jurisdiction only under Section 1152 of NRSA, the plain language of Sections 209(e) and 209(g) of the Rail Act, 45 U.S.C. §§ 719(e) and (g), clearly grants this Court original and exclusive jurisdiction over this matter and the power to stay all proceedings contrary to the provisions of the Act.

### A.    Defendant's Arguments Notwithstanding, this Court Has Original and Exclusive Jurisdiction Under Section 209(e)(2) of the Rail Act

The defendant argues erroneously that this Court does not have exclusive jurisdiction under Section 209(e)(2) to decide this matter. The defendant claims that, in

-6-

*Reading*, Conrail argued that this Court had exclusive jurisdiction pursuant to Section 209(e), and that this Court rejected that argument. Again the defendant is misreading the opinion of this Court in *Reading*. This Court did not exercise Section 209(e) jurisdiction in *Reading* only because 209(e) did not and does not provide authority for this Court to grant the relief Conrail was seeking in *Reading*, namely, an overall declaration interpreting the preemptive effect of since-repealed Section 709(b). Here the relief Conrail seeks is an order declaring it has no liability as a successor in interest to Erie Lackawanna based on an interpretation of a specific conveyance order entered under Section 303 of the Rail Act. Such relief, as discussed next, falls squarely within this Court's Section 209(e)(2) jurisdiction.

Pursuant to Section 303 of the Rail Act, 45 U.S.C. § 743, this Court issued a Conveyance Order on March 25, 1976 conveying, as of April 1, 1976, certain of Erie Lackawanna's rail properties (and those of other then-bankrupt railroads) to Conrail free and clear of any liens or encumbrances (Conveyance Order attached hereto as Exh. A). Section 209(e)(2) provides that "[t]he original and exclusive jurisdiction of the special court shall include any action, whether filed by any interested person or initiated by the special court itself, to *interpret*, alter, amend modify or implement *any of the [conveyance] orders*" entered by the special court. 45 U.S.C. § 719(e) (emphasis added); *see also Consolidated Rail v. United States*, 883 F. Supp. 1565, 1571-72 (S.C.R.R.R.A. 1995) (holding that 209(e)(2) granted this Court jurisdiction to interpret conveyance orders, the final system plan, the statutes creating the final system plan, conveyance documents, and the related issue of successor liability). The Defendant's claim for successor liability in the Pennsylvania Action clearly requires an interpretation of that

specific 1976 conveyance order entered under Section 303. This Court has further previously affirmed that it is the final arbiter of the correct interpretation of the Rail Act and the orders and conveyance documents executed pursuant thereto. *Consolidated Rail v. United States*, 883 F. Supp. at 1574.

**B.    This Court has Consistently Exercised Jurisdiction Under Section 209(e)(2) of the Rail Act to Determine Issues of Successor Liability Requiring Interpretations of Conveyance Orders**

The defendant's second argument as to why this Court should not exercise 209(e)(2) jurisdiction relies on a novel interpretation of the Rail Act's well-established fresh start policy. Defendant admits that the great bulk of Erie Lackawanna's rail assets were conveyed to Conrail "free and clear of any liens and encumbrances," under Section 303 of the Rail Act, but argues that "liens and encumbrances" are not synonymous with an individual's right of action, and thus the defendant can properly assert a right of action against Conrail for the negligent conduct of Conrail's predecessor.

The defendant's argument must fail because this Court has previously and repeatedly concluded that the Rail Act provision conveying assets "free and clear from any liens or encumbrances" specifically *does* shield Conrail from successor liability. Specifically, this Court has reinforced Congress' intent in declaring that the Rail Act provided Conrail with a legal and financial "fresh start" to commence a financially viable railroad operation. *See Penn Central Corp. v. United States*, 862 F. Supp. 437, 446 (S.C.R.R.R.A. 1994) (denying successor liability claim against Conrail and holding, "Congress sought to give Conrail . . . a clean slate, free from the financial burdens of their predecessors," and that the Rail Act embodied a "fresh start policy"). In light of the Rail Act's "fresh start" policy, this Court has concluded that the Rail Act and this Court's

-8-

conveyance order shields Conrail from successor liability arising from the acts or omissions of Erie Lackawanna and other predecessor railroads which conveyed their assets to Conrail. *Id.; Consolidated Rail v. United States,* 883 F. Supp. at 1576-77.

In *Consolidated Rail v. United States,* for example, plaintiff Conrail filed a declaratory judgment action against a state transportation authority seeking a declaration of no liability for acts of environmental contamination at a rail yard and terminal that occurred prior to the 1976 conveyance of a predecessor railroad's assets to Conrail. *Consolidated Rail v. United States,* 883 F. Supp. at 1568-69. This Court found that Section 209(e)(2) granted it jurisdiction to interpret the conveyance orders and conveyance documents at issue, and to determine the related issue of successor liability. *Id.* This Court then granted Conrail's motion for summary judgment on the issue of successor liability, holding that the conveyance deeds, coupled with the Act's fresh start policy, limited Conrail's liability to post-conveyance acts only. *Consolidated Rail v. United States,* 883 F. Supp. at 1576-77.

Similarly, in *Consolidated Rail Corp. v. Commonwealth of Pa. Dep't of Gen. Svcs.,* No. 97-RR-01 (D.D.C. 1997) (attached hereto as Exh. B), Conrail sought a partial stay of Pennsylvania state court proceedings and a declaration that it had no successor liability. *Pa. Dep't of Gen. Svcs.,* at *1-2. The plaintiffs in the state court action were seeking to hold Conrail liable in direct and successor liability for a preconveyance incident in which construction workers struck an undisclosed underground electrical ductbank. This Court again asserted jurisdiction under 209(e)(2), granted the partial stay, and held that any claims of successor liability against Conrail were "legally extinguished." *Id.,* at 6-7.

**C.     This Court Has the Express Power to Grant a Stay of the Pennsylvania Action**

Pursuant to Section 209(g) of the Rail Act, 45 U.S.C. § 719(g), this Court may stay or enjoin any action or proceeding in any State or Federal Court, other than the United States Supreme Court, if such action is contrary to the provisions of the Rail Act or any orders of this Court pursuant thereto.  45 U.S.C. § 719(g).

**V.     THE INSTANT MATTER MUST BE DECIDED BY THE SPECIAL COURT**

Important policy concerns dictate that the issue currently before this Court is exactly the type of question that should only be answered by this Special Court.  *See Consolidated Rail Corp. v. State of Illinois*, 423 F. Supp. 941, 950 (S.C.R.R.R.A. 1976) (Wisdom, J.) (granting Conrail a declaratory judgment and holding that the "extraordinary power" given to the Special Court by Section 209(g) lends support to the conclusion that Congress intended certain decisions to be made only by the Special Court).  If the question of successor liability, as defendants urge, is determined under state law, Conrail will be in an untenable situation in which in certain jurisdictions it may be found to be a successor in interest to railroads which conveyed assets to Conrail and in other jurisdictions found not to be a successor.  Such a situation will necessarily lead to forum shopping and extensive, unnecessary litigation.  Conrail was formed by Congress via the Rail Act, it necessarily follows that the Special Court charged with interpreting the Rail Act and its conveyance orders should decide the issue and provide much needed uniformity.

## VI.    CONCLUSION

The plain language of the Rail Act gives this Court original and exclusive jurisdiction over this matter as well as the power to stay the Pennsylvania Action. This Court has previously asserted jurisdiction to decide similar questions, and previous decisions of this Court have read the "fresh start" policy embodied in the Rail Act to preclude successor liability. Further, the Defendant's motion to dismiss Conrail's complaint is based entirely on an incorrect and expansive interpretation of *Reading*. *Reading*, as discussed above, simply does not control here and does not preclude this Court's exercise of Section 209(e)(2) jurisdiction over the instant matter. Accordingly, Conrail respectfully requests that this Court deny the Defendant's motion to dismiss and grant the relief sought in the complaint.

Respectfully Submitted,

/s/ Laurence Z. Shiekman
Laurence Z. Shiekman (*pro hac vice*)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth & Arch Streets
Philadelphia, PA  19103
Telephone: (215) 981-4000
Facsimile: (215) 981-4750

Charles H. Carpenter (D.C. Bar # 432004)
PEPPER HAMILTON LLP
600 Fourteenth Street, N.W., Suite 500
Washington, DC  20005-2004
Telephone: (202) 220-1200
Facsimile: (202) 220-1665

Attorneys for Plaintiff,
Consolidated Rail Corporation

September 27, 2007

**CERTIFICATE OF SERVICE**

I, T. Joel Zuercher, hereby certify that on September 27, 2007, I served a true and correct copy of Plaintiff Consolidated Rail Corporation's memorandum of points and authorities in opposition to the Defendant's motion to dismiss Plaintiff's complaint upon counsel as follows:

**BY E-MAIL AND U.S. MAIL (FIRST CLASS)**

Kip A. Harbison, Esquire
Glasser & Glasser, PLC
Crown Center, Suite 660
590 East Main Street
Norfolk, VA 23510-2212

Denis C. Mitchell, Esquire
Stein, Mitchell & Mezines
1100 Connecticut Avenue, NW
Washington, DC 20036

_____
T. Joel Zuercher

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CONSOLIDATED RAIL CORPORATION** | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : |
| | : |
| **JOHN M. GRIBBIN** | : |
| | : |
| Defendant | : |
| | : |
| | : |

CIVIL ACTION NO. 07-01371

## ORDER

Upon consideration of Defendant's motion to dismiss Plaintiff's

complaint, Plaintiff's memorandum of points and authorities in opposition to Defendant's

motion to dismiss, and the entire record in this matter, it is hereby

ORDERED that the Defendant's motion is DENIED.

Dated: _____

_____
The Honorable Ricardo M. Urbina
United States District Court for the
District of Columbia

Exhibit A

'ACHMENT O, SHEET ?

M-000063

SPECIAL COURT REPORTER

SPECIAL COURT

REGIONAL RAIL REORGANIZATION ACT OF 1973

FILED

MAR 25 1976

JAMES F. DAVEY, Clerk

In the Matter of

Regional Rail Reorganization Proceedings

) 
) 
) Special Court 
) Misc. No. 75-3(A) 
) 
) 
)

ORDER OF CONVEYANCE TO TRUSTEES OF
RAILROADS IN REORGANIZATION IN THE REGION

Upon consideration that --

A.  On March 12, 1976, the United States Railway
Association ("Association"), pursuant to Section 209(c)
of the Regional Rail Reorganization Act of 1973, as
amended ("Rail Act"), certified to this Court which rail
properties of railroads in reorganization in the region
are to be transferred to Consolidated Rail Corporation
("Corporation") and which rail properties of such
railroads are to be conveyed to certain profitable
railroads as defined in the Rail Act ("Profitable
Railroads"), and advised this Court which rail properties
of such railroads are to be conveyed to States or
responsible persons in accordance with Section 208(d)(2)
of the Rail Act; and

Doc. No. 14

SPECIAL COURT REPORTER                    - 2 -                         M-000064

B.  on March 24, 1976, the Association filed with this Court a document supplementing and perfecting its March 12, 1976, certification of which rail properties of railroads in reorganization in the region are to be transferred to the Corporation and which rail properties of such railroads are to be conveyed to Profitable Railroads, States or responsible persons; and

C.  on March 22, 1976, the Corporation and the Association, pursuant to Sections 303(a)(1) and 306(a), respectively, of the Rail Act, deposited with this Court all of the stock and other securities of the Corporation and all of the Certificates of Value of the Association designated in the Final System Plan that are to be exchanged for the rail properties being transferred to the Corporation; and

D.  on March 22, 1976, each Profitable Railroad, State or responsible person, pursuant to Section 303(a)(2) of the Rail Act, deposited with this Court the compensation designated in the Final System Plan to be paid for the purchase of the rail properties being conveyed to such Profitable Railroad, State or responsible person; and

SPECIAL COURT REPORTER                    — 3 —

E. the unusually large and complex conveyancing
that will occur pursuant to this Order can be expected
to result in a need for corrections, amendments or
supplements to the Conveyance Documents (as hereinafter
defined) and to this Order in order to carry out the
intent of the Final System Plan, such Conveyance
Documents and this Order:

NOW THEREFORE, pursuant to Section 303(b)(1) of
the Rail Act, it is hereby ordered:

Section 1. Definitions

As used in this Order:

A. "Certification" shall mean the Certification
(including all Appendices and documents submitted
therewith and made a part thereof) filed with this Court
by the Association on March 12, 1976; and on file in the
office of the Clerk of this Court at the United States
Courthouse in Washington, D.C.

B. "Certification Supplement" shall mean the
Certification Supplement (including all Appendices and
documents submitted therewith and made a part thereof)
filed with this Court on March 24, 1976, and on file in

SPECIAL COURT REPORTER

M- 000065

- 4 -

the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.

C. "Conveyance Document Addendum" shall mean the collection of documents denominated "Conveyance Document Addendum," which was submitted to this Court by the Association with and as a part of the Certification and Certification Supplement and is on file in the office of the Clerk of this Court at the United States Courthouse in Washington, D.C.

D. "Conveyance Documents" shall mean the documents listed in the Conveyance Document Schedules (as hereinafter defined), except that the Conveyance Documents shall not include any document or part thereof filed with the Certification that has been superseded by any such document filed with the Certification Supplement. All maps referred to in the Conveyance Documents are contained in the Map Addendum (as hereinafter defined). All computer printouts of rolling stock and equipment inventory referred to in the Conveyance Documents are contained in the Rolling Stock and Equipment Addendum (as hereinafter defined).

SPECIAL COURT REPORTER

$M$-000067

- 5 -

E.  "Conveyance Document Schedules"  shall mean
the Schedules contained in Appendices I-A, II-A and IV
of the Certification and Certification Supplement, which
Schedules identify the Conveyance Documents.

F.  "Final System Plan" shall mean the Plan
prepared by the Association which became effective on
November 9, 1975, pursuant to Section 208(a) of the Rail
Act (a certified copy of which was filed with this Court
as Appendix O-A to the Certification), together with the
Supplemental Report to the Plan dated September 18, 1975,
described in Section 208(d)(1) of the Rail Act (a
certified copy of which was filed with this Court as
Appendix O-B to the Certification), the Official Errata
Supplement to the Plan dated December 1, 1975, described
in Section 208(d)(1) of the Rail Act (a certified copy
of which was filed with this Court as Appendix O-C to the
Certification), the Notice containing further
designations to the Plan, dated February 25, 1976,
described in Section 208(d)(3) of the Rail Act (a
certified copy of which was filed with this Court as
Appendix O-D to the Certification), and the document
filed as Appendix O-E to the Certification, which
document contains the further designations of rail
properties described in Section 208(d)(2) of the Rail Act.

SPECIAL COURT REPORTER        - 6 -                  M-000068

G.  "Transferor" shall mean the person or persons
identified as the Transferor, Grantor or Assignor in a
Conveyance Document.

H.  "Transferee" shall mean the person or persons
identified as the Transferee, Grantee or Assignee in a
Conveyance Document.

I.  "Map Addendum" shall mean the collection of
maps denominated "Map Addendum" which was submitted to
this Court by the Association with and as a part of the
Certification and Certification Supplement and is on file
in the office of the Clerk of this Court at the United
States Courthouse in Washington, D.C.  Copies of maps
from the Map Addendum which are referred to in the
Conveyance Documents relating to a particular Transferor
are also on file with the United States District Court
having jurisdiction over such Transferor.

J.  "Rolling Stock and Equipment Addendum" shall
mean the collection of rolling stock and equipment
inventory computer printouts denominated "Rolling Stock
and Equipment Addendum" which was submitted on March 12,
1976, to this Court by the Association with and as a part
of the Certification and is on file in the office of the

M-000069

SPECIAL COURT REPORTER

Clerk of this Court at the United States Courthouse in Washington, D.C. Copies of computer printouts from the Rolling Stock and Equipment Addendum which are referred to in the Conveyance Documents relating to a particular Transferor are also on file with the United States District Court having jurisdiction over such Transferor.

K. "Option" shall mean a Conveyance Document which grants to the Transferee identified therein the right to acquire designated rail properties from the Transferor identified therein in accordance with the terms and conditions set forth in such Document. For purposes of determining the period within which an Option may be exercised, the effective date of this Order shall be deemed to be 12:01 a.m. on April 1, 1976.

L. "Acknowledgment of Receipt and Acceptance of Conveyance Document(s)" shall mean the instruments, copies of which are attached to this Order as Addenda I and II, that are to be executed by the Transferees and delivered to the appropriate Transferors in accordance with the terms of this Order.

M. "Conveyance Date" shall mean 12:01 a.m. on April 1, 1976, except that, in the case of property acquired pursuant to the exercise of an Option,

ATTACHMENT D, SHEET 9

A-000070

SPECIAL COURT REPORTER _____ - 8 - - _____

"Conveyance Date," for purposes of paragraphs A(1) and
A(2) of Section 4 of this Order, shall mean the date on
which such property is conveyed to the Transferee
pursuant to the exercise of such Option.

Section 2.  Execution and Delivery of Conveyance
Documents

The trustee or trustees of each Transferor
identified in each Conveyance Document shall execute
(and, where indicated, shall acknowledge) and on or
before the Conveyance Date shall deliver such Conveyance
Document to the Transferee identified therein -- such
delivery to be effective as of the Conveyance Date.  Any
such Conveyance Document (or any Conveyance Document
delivered pursuant to the exercise of an Option) may be
executed, acknowledged, and delivered on behalf of the
trustee or trustees by any person or persons who has or
have been authorized to perform such acts on behalf of
the trustee or trustees by the United States District
Court or other court having jurisdiction over the
Transferor identified in such Conveyance Document.
Execution, acknowledgment and delivery of any Conveyance
Document in which The Connecting Railway Company is
identified as Transferor shall be made by The Connecting
Railway Company as Debtor in possession of its properties

SPECIAL COURT REPORTER

$M-000071$

("Connecting"). The execution and delivery of any
Conveyance Document by or on behalf of a trustee or
trustees or Connecting pursuant to this Order shall not
constitute a waiver of any right that such trustee or
trustees or Connecting may have to object to or
challenge, in whole or in part, the conveyance of the
property identified in such Conveyance Document or the
terms and conditions of any such conveyance or Conveyance
Document. The conveyance of all properties pursuant to
this Section shall be subject to all applicable terms and
conditions of the Conveyance Documents, the Rail Act and
this Order, and each Transferor and Transferee shall
faithfully and expeditiously comply with and fulfill all
such terms and conditions.

Section 3. Acknowledgment of Receipt and Acceptance
of Conveyance Document(s)

Concurrently with delivery from a Transferor of
any Conveyance Document or Documents pursuant to this
Order, the Transferee shall execute and deliver to such
Transferor and forthwith file with the Clerk of this
Court an Acknowledgment of Receipt and Acceptance of
Conveyance Document(s) in the form attached hereto as
Addendum I; except that when a Conveyance Document is
delivered pursuant to the exercise of an Option, the

SPECIAL COURT REPORTER          - 10 -                      M-000072

Acknowledgment of Receipt and Acceptance of Conveyance
Document(s) shall be in the form attached hereto as
Addendum II and shall specify the time at which such
Conveyance Documents were actually delivered.  In any
case in which a Transferee receives more than one
Conveyance Document from a particular Transferor, the
Transferee may deliver and file a single Acknowledgment
of Receipt and Acceptance of Conveyance Documents
referring to all of the Conveyance Documents received
from such Transferor.  The execution of any Conveyance
Document or the execution and delivery of any
Acknowledgment of Receipt and Acceptance of Conveyance
Document(s) by any Transferee pursuant to this Order, or
the execution and delivery of any other document pursuant
to the terms of such Acknowledgment of Receipt and
Acceptance of Conveyance Document(s), shall not
constitute a waiver of any right that such Transferee may
have to object to or challenge, in whole or in part, the
obligations and conditions imposed on such Transferee by
the terms of any Conveyance Document or the terms and
conditions of the conveyance of the property identified
in such Conveyance Document.

SPECIAL COURT REPORTER                        - 11 -

Section 4.  Certain Terms and Conditions of Conveyance

Each conveyance of property pursuant to this
Order shall, where applicable, be subject to the
following terms and conditions:

A.  Allocation of Taxes, Assessments, Rents,
License Fees, User Fees and Other Charges

(1)  Allocation Over Time.  As between the
Transferor and Transferee identified in any Conveyance
Document with respect to rail property conveyed to a
Transferee pursuant to this Order, the obligation, if
any, for payment of

(a)  any tax, assessment, license fee,
or other charge imposed by a
governmental authority on or with
respect to any such property or
any use thereof or thereon for any
period of time or term within
which the Conveyance Date falls,
or

(b)  any rent, license fee, user fee
or other charge imposed under or
by virtue of any lease, license,

M-000074

easement, encumbrance or other
agreement that continues to attach
to such property after the
Conveyance Date,

shall be adjusted on a pro rata basis to the Date of
Conveyance so that

(i)  the Transferor is obligated for
any such payment as is
attributable to that portion of
such period or term preceding the
Conveyance Date, and

(ii)  the Transferee is obligated for
any such payment as is
attributable to the balance of
such period or term.

(2)  Allocation in the Case of Subdivided or
Aggregated Property.  In the case of any rail property
referred to in the preceding subdivision (1) that:

(a)  is part of a parcel of property
or an aggregation of property that
has been or is taxed, assessed or
otherwise charged as a unit for

M-000075

SPECIAL COURT REPORTER                — 13 —

a period of time or term within
which the Conveyance Date falls,
or

(b)  is part of a parcel of property
or an aggregation of property that
is subject to one or more leases,
licenses, easements, encumbrances
or other agreements that continue
to attach to such parcel or
aggregation of property after the
Conveyance Date,

the obligation for payment of any tax, assessment, rent,
license fee, user fee or other charge that is or becomes
payable with respect to such parcel or aggregation of
property for that part of such period of time or term as
follows the Conveyance Date shall be allocated to such
Transferee in the proportion that the value of such
property conveyed to such Transferee bears to the total
value of such parcel or aggregation of property, determined
as of the Conveyance Date, provided that, if any such
tax, assessment, rent, license fee, user fee or other
charge is attributable to the parts constituting such
parcel or aggregation of property on a basis other than the

M-000076

SPECIAL COURT REPORTER                        - 14 -

relative values of such parts, such allocation shall be
made on such other basis.  If the parties are unable to
agree on the basis or method for allocating any such tax,
assessment, rent, license fee, user fee or other charge,
either or both of such parties may apply to this Court
for an order determining the basis or method to be used
for such allocation.

**B.  Pre-Recording Protection of Transferors
and Transferees**

In the case of real property conveyed, or
reserved and excepted from conveyance, in any Conveyance
Document, on and after the Conveyance Date and until such
Conveyance Document shall have been filed for record with
respect to such property in each local jurisdiction in
which such property is situated, no Transferor or
Transferee identified in such Conveyance Document shall
transfer or convey such property, in whole or in part,
or create any lien or encumbrance on or with respect to
such property, unless the instrument effecting such
transfer or conveyance or creating such lien or
encumbrance provides that such property is subject to any
easement, encumbrance, right or benefit that may have
been created or recognized in or by such Conveyance
Document.

ATTACHMENT D, SHEET 15

M-000077

SPECIAL COURT REPORTER     - 15 -

### C.  Resignations of Representatives of the Trustees

On and after Conveyance Date, the trustee or
trustees of each Transferor and Connecting shall, upon
the request of a Transferee, use his, their or its best
efforts to cause any person who is serving at the request
of such Transferor as a director or officer of another
corporation, partnership, joint venture, or other
enterprise, the stock ownership or other corporate
interest in which is conveyed from such Transferor to
such Transferee pursuant to this Order, to resign from,
or otherwise act in accordance with the lawful directions
of the Transferee with respect to, such person's position
as such director or officer; provided, however, that
nothing herein shall be deemed a restraint upon the
ability of any such person otherwise to resign from such
position as director or officer.

SPECIAL COURT REPORTER          - 16 -

Section 5.  Correction of Errors

        A.  Correction of Errors by or on Application
             of Transferors and Transferees

       To the extent necessary to

           (a)  carry out the intent of a
               Conveyance Document or to perfect
               a designation contained in the
               Final System Plan, or

           (b)  record or otherwise perfect any
               Conveyance Document delivered
               pursuant to this Order under any
               applicable statute, ordinance,
               rule or regulation,

each Transferor or Transferee shall perform, execute,
acknowledge, endorse and deliver any and all such further
acts, deeds, transfers, assignments, certificates and
other instruments as may be reasonably requested by any
Transferor or Transferee in order to convey, reconvey,
confirm, clarify, identify or more precisely describe the
properties designated to be conveyed in the Final System
Plan or the properties conveyed or reserved and excepted
from conveyance in any Conveyance Document (or intended

M- 000079

SPECIAL COURT REPORTER                    - 17 -

so to be).  If such parties are unable to agree upon or
effectuate such action as should be taken pursuant to
this paragraph or the division of costs incident to such
action, such party or parties may apply to this Court for
such relief as may be appropriate; provided that no
person shall apply to this Court for an order or other
action under this paragraph A without concurrently
serving the Association with notice of such application.

**B.  Retention of Jurisdiction**

This Court retains jurisdiction under Section
209(e) of the Rail Act.

**Section 6.  Certification of Documents to Transferors and
Transferees**

Promptly after the entry of this Order, the
Association shall deliver to each Transferor and
Transferee a copy of the Conveyance Documents to which
such Transferor or Transferee is a party together with
each map and rolling stock and equipment inventory
computer printout referred to in such Conveyance
Documents and shall certify that such Conveyance
Documents, maps, and printouts are true copies of the
Conveyance Documents, maps, and printouts certified by

- 18 -

M~00008

SPECIAL COURT REPORTER

the Association to this Court and filed in the office of
the Clerk of this Court.

Section 7.  Issuance of Certified Copies

Upon request of any Transferor or Transferee or
any interested person and upon payment of such reasonable
fee as may from time to time be established by the rules
of this Court, the Clerk of this Court shall issue a
certified copy of this Order together with a certified
copy of any Conveyance Document requested by such person
and shall certify that such Conveyance Document was
certified to this Court by the Association and is
identified in the files of this Court by the Document
Number appearing on such certified copy of such
Conveyance Document.

Section 8.  Compilation and Deposit of Sets of Conveyance
Documents

The Association shall cause to be compiled
complete sets of the Conveyance Documents (and the maps
referred to in such Conveyance Documents) in the sequence
listed in the Conveyance Document Schedules and in the
form prepared for execution and delivery of such
Conveyance Documents, and shall deposit two complete sets
thereof with the Clerk of this Court on or before 12:00

ATTACHMENT U. SHEET 19

M-008081

SPECIAL COURT REPORTER          - 19 -

noon on March 29, 1976, and shall attest that each such

set contains true copies of all such Conveyance Documents

certified to this Court by the Association.

Henry J. Friendly
Presiding Judge

John Minor Wisdom
Judge

Roszel C. Thomsen
Judge

Date:   March 15, 1976

# Exhibit B

03/24/97  MON 16:47 FAX 202 273 0479      ADMIN/SERVICE                    ☑002
MAR-24-1997  11:56          JUDGE WEINER                                P.01/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION          :
                                       :
                                       :
                                       :        Special Court
                  v.                   :        Regional Rail Act
                                       :        C.A. NO. 97-RR-01[1]
                                       :
                                       :
COMMONWEALTH OF PENNSYLVANIA           :
DEPARTMENT OF GENERAL SERVICES         :
and THE FRANK BRISCOE CO., INC.        :                        **FILED**

WEINER, J.[2]                                March 24, 1997 MAR 24 1997

**MEMORANDUM OPINION AND ORDER**          NANCY MAYER-WHITTINGTON, CLERK
                                                  U.S. DISTRICT COURT

          Consolidated Rail Corporation (Conrail) brought this

action for declaratory relief against the Commonwealth of Pennsyl-

vania Department of General Services (DGS) and The Frank Briscoe

Company, Inc. (Briscoe), seeking a partial stay of proceedings in

the Court of Common Pleas of Dauphin County.  Conrail seeks a

declaration that the subject matter of the underlying suit is

partly within the exclusive jurisdiction of this court[3], and that

_____

          [1]The Special Court, Regional Rail Reorganization Act of 1973
was abolished by Congress effective January 17, 1997, and its
original jurisdiction transferred to the United States District
Court for the District of Columbia.

          [2]United States District Judge for the Eastern District of
Pennsylvania, and Judge of the Special Court, Regional Rail
Reorganization Act, sitting by designation.

          [3]"This court" as used herein is intended to refer to the
United States District Court for the District of Columbia,
exercising the exclusive jurisdiction of the Special Court.

03/24/97  MON 16:47 FAX 202 273 0479        ADMIN/SERVICE                    ☒003
     MAR-27-1997  11:57        JUDGE WEINER                              P.02/09

it has no liability as a successor or assignee of the Penn Central
Corporation.  Also before the court is a motion by the defendants
to dismiss.  This matter was heard on an expedited basis since the
Dauphin County action is scheduled for imminent trial.[4]  For the
reasons which follow, Conrail's motion for a partial stay of the
Dauphin County action is granted, the defendants' motion to dismiss
is denied and final declaratory judgment is entered in favor of
Conrail and against the defendants.

        Our jurisdiction is asserted under Section 209(e)(2) of
the Rail Act, 45 U.S.C. § 719(e)(2).  This action arises out of the
construction of the Pittsburgh Exposition and Convention Center.
On July 1, 1975, the trustees of the Penn Central Corporation
transferred title to the land underlying the site of the Convention
Center to DGS by a deed.  At the time of the conveyance, Conrail
was not yet in existence and hence had no interest in the property.
By Conveyance Order issued by this court on March 25, 1976, we
directed Penn Central to execute a deed effective April 1, 1976,
conveying certain of Penn Central's rail properties to Conrail.
Under Section 303(b)(2) of the Rail Act, such conveyance was to be
made "free and clear of any liens or encumbrances" consistent with
the Final System Plan proposed by the United States Rail Associa-
tion.  The conveyance included all of Penn Central's remaining
interests in the land underlying the Convention Center.  Since Penn
Central had already conveyed the land to DGS, the April 1, 1976

_____

        [4]The parties have now also agreed to have the court enter a
final decision on the merits, as well as the motion for partial
stay.

                                2.

03/24/97  MON 16:48 FAX 202 273 0479      ADMIN/SERVICE                    ☒001
MAR-24-1997  11:57      JUDGE WEINER                              P.03/09

conveyance in effect transferred Penn Central's remaining rights of way, transportation easements and other easements. Both the deed and the accompanying bill of sale contained language limiting Conrail's liability for obligations accruing prior to the date of delivery of the deed.[3]

The Convention Center was completed in August 1981, nearly two years behind schedule. Briscoe, who served as general contractor on the project, along with DGS have commenced two civil actions seeking to recover damages allegedly attributable to the delay in construction. They brought a joint action in Dauphin County in June 1986 naming thirteen defendants. Conrail was not joined. Rather, Conrail became a party some two years later when it was named in a third party complaint filed by the Peter F.

---

[3]The deed provided:
  . . . the Grantee (Conrail) assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto and, where an obligation or liability is related to a period which is both before and after such date, the Grantee assumes only that portion of the obligation or liability which is reasonably allocable to the part of the period after such sale.
Schedule E to the Bill of Sale provided:
  Grantee assumes the foregoing contracts and obligation to perform and observe all covenants and conditions therein contained on the part of Grantor (Penn Central) to be performed and observed after the date of delivery hereof . . . Grantee assumes no liabilities or obligations of any kind which have accrued prior to the date of delivery hereof or which thereafter arise out of any event, act or failure to act which occurred prior thereto in connection with the foregoing contracts or any property which is the subject thereof.

3

Loftus Division of Eichleay Engineering (Loftus).  DGS filed a second action in 1989 in which it named eight defendants; again Conrail was not one of them.  It was again joined by Loftus.  In 1995, the two actions were consolidated for trial.

The claims against Conrail arise out of the undisclosed presence of an underground electrical ductbank, which was struck by construction workers driving piles for the new Convention Center. The ductbank was struck after Penn Central had conveyed the land to DGS, and after its remaining interests were conveyed to Conrail. The claims against Conrail seek to hold it liable both as a successor to Penn Central, as well as for independent, post-conveyance acts of its agents who were on site during the construction.  Successor liability is premised upon Penn Central's pre-conveyance statements to DGS that all utilities had been abandoned, Penn Central's failure to de-energize and relocate the power line, and its failure to include the power line on construction drawings. Direct liability is premised upon Conrail's unreasonable delay in moving the power line after its accidental discovery, as well as the fact that its on site agent failed to warn of the existence of the power line.

Reduced to its essence, Conrail argues that since the successor liability issues presented in the Dauphin County action are within the exclusive jurisdiction of this court, the Dauphin County action must be stayed.  Pursuant to Section 209(g) of the Rail Act, this court may stay or enjoin any action or proceeding in any state or federal court, other than the United States Supreme

4

03/24/97   MON 16:48 FAX 202 273 0479        ADMIN/SERVICE                    ☒006
      MAR-24-1997  13:34           JUDGE WEINER                                    P.01/03

Court or the United States Court of Appeals for the District of
Columbia Circuit, if such action is contrary to the provisions of
the Rail Act or an order of this court.    45 U.S.C. § 719(g).
Section 209(e)(2) of the Rail Act provides:

> The original and exclusive jurisdiction of the
> special court [now the District Court for the
> District of Columbia] shall include any action
> . . . to interpret, alter, amend, modify, or
> implement any of the orders entered by such
> court . . . in order to effect the purposes of
> this chapter or the goals of the final system
> plan.

45 U.S.C. § 719(e)(2).    Conrail avers that this court is the
exclusive forum to adjudicate the successor liability issue since
it involves interpretation of our prior conveyance order and the
conveyancing documents executed in accordance with the final system
plan.

Conrail is correct when it asserts that this court is the
final arbiter of the correct interpretation of the conveyance
documents, the FSP and our own conveyance order.  See Penn Central
Corp. v. United States, 862 F.Supp. 437, 467 (Sp.Ct.R. R.A. 1994).
Further, the defendants' arguments that a stay would waste judicial
resources, since the primary claims in the underlying action do not
implicate the Rail Act, is inapposite:  if any claim sought to be
asserted in the court of common pleas comes within the ambit of
this court's exclusive jurisdiction, any adjudication there would
be a nullity.  The question we must decide is how far our exclusive
jurisdiction extends.

It is beyond peradventure that, to the extent liability
is premised upon successor liability, it is governed by this

5

court's conveyance order, or the conveyance documents; and is
within our jurisdiction. While both sides point to our decisions
in Penn Central v. United States, supra and Consolidated Rail Corp.
v. United States, 883 F.Supp. 1565 (Sp.Ct.R.R.R.A. 1995), as
support for their jurisdictional arguments, we find this action is
far more simple than the situations presented there. In both Penn
Central and Consolidated Rail, we were faced with the interplay of
the Rail Act and a second statutory scheme, the Comprehensive
Environmental Response, Compensation and Liability Act, as amended
by the Superfund Amendments and Reauthorization Act, 42 U.S.C.
§9601, et seq. Finding that, in enacting CERCLA, Congress intended
its liability provisions to apply notwithstanding any other
provision of law, we concluded that CERCLA was an exception to the
fresh start policy embodied in the Rail Act. While we refused to
completely exonerate Conrail from post-conveyance CERCLA liability,
we reconciled the two statutory schemes by making clear that
pursuant to the Rail Act, liability for pre-conveyance environmen-
tal contamination belonged to Penn Central and not Conrail.

Here, there is no other counterbalancing statutory scheme
at issue. As we read the underlying pleadings, liability is
premised upon common law contract and tort theories, seeking, inter
alia, to hold Conrail responsible as corporate successor for Penn
Central's acts and omissions. The fresh start policy embodied in
the Rail Act, and incorporated into the conveyancing documents,
creates a bright line date upon which the liability of Penn Central
ended and the liability of Conrail began. Congress mandated that

6

there be no successor liability hindering the future financial well being of the newly created Conrail. Any recovery in contract, tort or otherwise for the conduct of Penn Central was legislatively and contractually apportioned to be satisfied out of the assets of the bankrupt railroad.

Thus, to the extent that the underlying actions seek to hold Conrail liable in the court of common pleas as Penn Central's successor in interest for Penn Central's conduct, that liability has been legally extinguished. However, the pleadings also make facially clear that liability is asserted against Conrail for its independent negligence arising out of its inspector's failure to notify the contractors of the ductbank, and its allegedly unreasonable delay in relocating it. As that liability arises out of Conrail's post-conveyance ownership of the railroad rights of way and easements, it is within the jurisdiction of the court of common pleas.

An appropriate order follows.

7

03/24/97  MON 18:49 FAX 202 273 0479      ADMIN/SERVICE                    @009

MAR-24-1997  12:00      JUDGE WEINER                                    P.08/09

IN THE UNITED STATED DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSOLIDATED RAIL CORPORATION    :
                                 :
                                 :
                                 :
        v.                       :        Special Court
                                 :.       Regional Rail Act
                                 :        C.A. NO. 97-RR-01
                                 :
COMMONWEALTH OF PENNSYLVANIA     :
DEPARTMENT OF GENERAL SERVICES   :        **FILED**
and THE FRANK BRISCOE CO., INC.  :
                                          MAR 24 1997

                                          NANCY MAYER-WHITTINGTON, CLERK
                                          U.S. DISTRICT COURT

<u>JUDGMENT ORDER</u>

The motion to dismiss defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc. is DENIED.

The motion of plaintiff Consolidated Rail Corporation to stay is GRANTED.

Judgment on the merits is ENTERED in favor of plaintiff Consolidated Rail Corporation and against defendants Commonwealth of Pennsylvania Department of General Services and The Frank Briscoe Co., Inc.

The court DECLARES that pursuant to the conveyance orders issued by this court and the conveyance documents executed thereunder, there is no successor liability of Consolidated Rail Corporation for the acts and omissions of the Penn Central Transportation Company for the period prior to April 1, 1976 as asserted in the pleadings filed in the consolidated actions

8

03/24/97  MON 16:48 FAX 202 273 0479      ADMIN/SERVICE                    ☐010
    MAR-24-1997  12:01      JUDGE WEINER                              P.09/09

captioned Commonwealth of Pennsylvania, Department of General Services and the Frank Briscoe Co., Inc. v. Celli-Flynn & Associates, P.C., et al., Civil Action Number 1806-S-1986 in the Court of Common Pleas of Dauphin County, Pennsylvania.

IT IS SO ORDERED.

*Charles R. Weiner*

CHARLES R. WEINER

9