**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| CONSOLIDATED RAIL CORPORATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-1370 (RMU) |
| | : | | |
| v. | : | Document No.: | 6 |
| | : | | |
| GERARD A. RITTER and SUSAN R. NOREK *ex rel.* GERARD H. RITTER, deceased, | : | | |
| | : | | |
| Defendants. | : | | |

| | | | |
|---|---|---|---|
| CONSOLIDATED RAIL CORPORATION, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 07-1371 (RMU) |
| | : | | |
| v. | : | Document No.: | 9 |
| | : | | |
| JOHN M. GRIBBIN, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

**GRANTING THE DEFENDANTS' MOTIONS TO DISMISS**

**I. INTRODUCTION**

The plaintiff, Consolidated Rail Corporation ("Conrail"), hauls these cases before the court seeking declaratory relief under the Regional Rail Reorganization Act of 1973 ("Rail Act"), 45 U.S.C. §§ 701 *et seq.*, as amended by the Northeast Rail Service Act of 1981 ("NRSA"), 45 U.S.C. §§ 1101 *et seq.* Specifically, Conrail requests that the court enter an order declaring that the Rail Act proscribes successor liability for personal injury claims stemming from conduct prior to Conrail's formation. The defendants are former employees of Erie

Lackawanna – a railroad company whose assets were transferred to Conrail pursuant to the Rail Act. These defendants allege that Erie Lackawanna negligently exposed them to asbestos and have filed suits against Conrail, which are currently pending in Pennsylvania state court, to recover under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51 *et seq.*, for the adverse effects of this exposure. They contend that the Rail Act does not prevent their claims from moving forward. The court agrees. Because the Rail Act's successor liability provisions relate to land use, the court concludes that the Act does not address the type of successor liability at issue here – preconveyance personal injury claims. Therefore, the court grants the defendants' motions to dismiss.

## II.  FACTUAL & PROCEDURAL BACKGROUND

Congress established Conrail under the Rail Act of 1973 to revitalize the rail industry by creating "an economically viable system capable of providing adequate and efficient rail service." 45 U.S.C. § 701(b). In so doing, Congress, in conjunction with the Special Court constituted under the Rail Act, transferred the assets from Erie Lackawanna and several other Northeast railroad companies to Conrail "free and clear of any liens or encumbrances." Ritter Compl. ¶¶ 7-9 (quoting 45 U.S.C. § 743(b)(2)); Gribbin Compl. ¶¶ 8-10 (same).

Before the transfer and reorganization, the defendants allege that their former employer, Erie Lackawanna, negligently exposed them to asbestos in violation of FELA. Ritter Mot. to Dismiss ("Ritter Mot."), Ex. A; Gribbin Mot. to Dismiss ("Gribbin Mot."), Ex. A. They, or their personal representatives, initiated suits in Pennsylvania state court against Conrail, as Erie Lackawanna's alleged successor-in-interest, to recover for injuries or death that they contend resulted from the exposure to asbestos. Ritter Compl. ¶¶ 4-5; Gribbin Compl. ¶¶ 4-5.

On July 27, 2007, while the defendants' FELA suits were proceeding in Pennsylvania state court, Conrail filed complaints in this court requesting that the court determine the scope of Conrail's successor liability for personal injury claims. Ritter Compl. ¶¶ 19-22; Gribbin Compl. ¶¶ 21-24. The defendants subsequently filed motions to dismiss, asserting that their personal injury claims do not fall within the protections envisioned under the Rail Act. With the issues ripe for review, the court turns to the defendants' motions.

### III.  ANALYSIS

#### A.  Legal Standard for a Motion to Dismiss Pursuant to Rule 12(b)(1)

Federal courts are courts of limited jurisdiction and the law presumes that "a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938); *see also Gen. Motors Corp. v. Envtl. Prot. Agency*, 363 F.3d 442, 448 (D.C. Cir. 2004) (noting that "[a]s a court of limited jurisdiction, we begin, and end, with an examination of our jurisdiction").

Because "subject-matter jurisdiction is an 'Art. III as well as a statutory requirement[,] no action of the parties can confer subject-matter jurisdiction upon a federal court.'" *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting *Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxite de Guinea*, 456 U.S. 694, 702 (1982)). On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). The court may dismiss a complaint for lack of subject-matter jurisdiction only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Empagran S.A. v. F.*

*Hoffman-Laroche, Ltd.*, 315 F.3d 338, 343 (D.C. Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

Because subject-matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion for failure to state a claim. *Macharia v. United States*, 334 F.3d 61, 64, 69 (D.C. Cir. 2003); *Grand Lodge of Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). Thus, the court is not limited to the allegations contained in the complaint. *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987). When necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992).

### B. The Court Grants the Defendants' Motions to Dismiss

On March 25, 1976, the Special Court created by the Rail Act issued a conveyance order pursuant to § 743(b) transferring "all rail properties" from various railroads in reorganization to Conrail "free and clear of any liens or encumbrances." 45 U.S.C. § 743(b)(2). Because the Rail Act provides that "[t]he original and exclusive jurisdiction of [the District Court for the District of Columbia] shall include any action . . . to interpret, alter, amend, modify, or implement any of the orders entered by such court pursuant to [§ 743(b)] of this Act," 45 U.S.C. § 719(e)(2), Conrail asserts that the court has exclusive jurisdiction to determine whether Conrail can be held liable for personal injury claims arising before the court issued the conveyance order. Conrail's Opp'n to Ritter's Mot. at 7. The defendants do not dispute that the court has exclusive jurisdiction to interpret the conveyance order issued on March 25, 1976; they assert instead that

4

the conveyance order is inapposite to their suit for damages stemming from the asbestos exposure. Ritter Mot. at 4-8; Gribbin Mot. at 2-5. Specifically, defendant Gribbin contends that "liens" and "encumbrances" are not synonymous with a "right of action." Gribbin Mot. at 3. But Conrail retorts that broadly interpreting "lien" and "encumbrance" to include a private right of action in tort is necessary, given Congress's intent to "provide[] Conrail with a legal and financial 'fresh start.'" Conrail's Opp'n to Ritter's Mot. at 9.

To determine whether § 719(e)(2) and § 743(b)(2) afford the court jurisdiction to address Conrail's claim for declaratory relief,[1] the court "begin[s] with the plain language of the statute in question." *In re England*, 375 F.3d 1169, 1178 (D.C. Cir. 2004). Section 743(b)(2) provides the operative language: "All rail properties . . . shall be conveyed free and clear of any liens or encumbrances . . . ." 45 U.S.C. § 743(b)(2). When Congress enacted the Rail Act in 1973, "a 'lien' was defined as '[a] charge or security or incumbrance upon property.' 'Incumbrance,' in turn, was defined as '[a]ny right to, or interest in, land which may subsist in another to the diminution of its value . . . .'" *Permanent Mission of India to the United Nations v. City of New York*, 127 S. Ct. 2352, 2356 (2007) (quoting BLACK'S LAW DICTIONARY 908, 1072 (4th ed. 1951)) (internal citation omitted). Conrail's invitation for the court to stretch the meaning of "lien" and "encumbrance" to encompass and thereby preclude successor liability for violations of state tort law must be declined; as the definitions clearly explicate – both words denote interests in property rather than interests protected by tort law. *See id.*

Although the clear and unequivocal definition of a term is controlling, *Metropolitan Life Insurance Company v. Massachusetts*, 471 U.S. 724 (1985), the court notes that both Congress's

---

[1] Conrail does not dispute that the only remaining basis for the court to exercise jurisdiction is § 719(e)(2) of the Rail Act. Ritter Mot. at 8; Gribbin Mot. at 5; *Di Benedetto v. Morgenthau*, 148 F.2d 223, 225 (D.C. Cir. 1945) (holding that the Declaratory Judgment Act does not "extend jurisdiction over an area not already covered or expressly forbidden").

intent in formulating the Rail Act and subsequent case law interpreting the Rail Act support this plain reading of the text.  Congress enacted the Rail Act to, *inter alia*, provide for "the reorganization of railroads in this region into an economically viable system capable of providing adequate and efficient rail service to the region."  45 U.S.C. § 701(b)(2).  As a way of ensuring Conrail's economic viability, Congress created a mechanism whereby it reimbursed Conrail for "all cases or claims by employees or their personal representatives for personal injuries or death against a railroad in reorganization . . . arising prior to the date of conveyance of rail properties."  45 U.S.C. §§ 797h(b) and 721(h)(1).  While reimbursement is inapplicable to the instant case because the defendants' former employers are no longer in reorganization, this mechanism provides guidance in understanding Congress's intent with respect to personal injury claims.  As one court noted:

> There is no discernible reason to suppose that the same Congress which expressly provided that workers who had the opportunity to bring FELA claims for preconveyance injuries prior to the consummation of bankruptcy proceedings would be entitled to full and expedited relief intended, *sub silentio*, to foreclose any available remedy from those workers who did not (and through no fault of their own could not) file identical claims until after their former employers had been discharged in bankruptcy.

*Consolidated Rail Corp. v. Reading Co.*, 654 F. Supp. 1318, 1321-1323, 1333 (D.D.C. 1987).  Accordingly, the court does not read the "fresh start" policy embodied in the Rail Act to preclude preconveyance personal injury claims.

Indeed, the cases Conrail invokes to buttress its conclusion that the "fresh start" policy should be extended to preconveyance personal injury claims are distinguishable.  First, Conrail cites *Consolidated Rail Corporation v. United States*, in which Conrail sought a declaratory judgment precluding liability under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. §§ 9601 *et seq.*, "for acts of contamination

6

which occurred before [Conrail] owned or operated the property." 883 F. Supp. 1565, 1576-77 (Sp. Ct. R.R.R.A. 1995). In that case the court interpreted a deed that transferred the allegedly contaminated property to Conrail. *Id.* The deed provided that Conrail "assumes no obligation or liability that arises after the date of delivery of this Deed out of any event, act or failure to act that occurred prior thereto . . . ." *Id.* at 1576 n.49. This language along with the "free and clear" language discussed *supra* and the Rail Act's "fresh start" policy persuaded the court to limit liability to post-conveyance actions. *Id.* at 1576-77. Unlike the cases before the court now, however, that court dealt with liability inextricably linked with land use.

Similarly, the second case cited by Conrail, *Consolidated Rail Corporation v. Pennsylvania Department of General Services*, discusses Conrail's liability for its predecessor failing to disclose and relocate an underground electrical duct. Civ. No. 97-RR-01, 4 (Sp. Ct. R.R.R.A. 1997). In this unpublished decision, the court concluded that Conrail could not be held liable for construction delays that resulted from preconveyance oversights related to the existence of the electrical duct. *Id.* at 5-7. This result, the court explained, followed from Congress's "fresh start" policy and mandate that the property be "free and clear of any liens or encumbrances." *Id.*

This reasoning unlinked from land use, however, lies fallow. In *Reading*, for example, Conrail sought declaratory relief against defendants, who, like the defendants in this case, had already brought FELA actions for asbestos-related injuries in state court. 654 F. Supp. at 1321. Conrail, for its part, attempts to distinguish *Reading* by noting that the court was interpreting the preemptive effect of § 797h(b). Conrail's Opp'n to Gribbin's Mot. at 7. This is, according to Conrail, substantially different from what it is requesting in the instant case, which is "an order declaring it has no liability as a successor in interest to Erie Lackawanna based on an

7

interpretation of a specific conveyance order" – namely, § 743(b)(2). *Id.* Conrail, therefore, insists that the case "has no applicability to the instant matter." Conrail's Opp'n to Ritter's Mot. at 5. Furthermore, it notes that the court in *Reading* relied on the NRSA, 45 U.S.C. § 1152(a)(1) for jurisdiction; whereas here the court must exercise jurisdiction pursuant to the Rail Act, 45 U.S.C. § 719(e). *Id.* at 6. Nevertheless, the court considers *Reading* instructive in granting the defendants' motion to dismiss. As discussed *supra*, the *Reading* court's analysis of Congress's intent with respect to personal injury claims remains relevant to this case. And, drawing from Congress's disparate assessments of liability for personal injuries compared with liability related to land use under the Rail Act, *compare* 45 U.S.C. § 797h(b) *with* 45 U.S.C. § 743(b)(2), the court has little trouble making a comparable distinction in case law. In sum, although Conrail is correct to point out that the legal arguments in the two cases are not in perfect harmony, the courts' conclusions ring with one accord.

## IV. CONCLUSION

For the foregoing reasons the court grants the defendants' motions to dismiss. An order consistent with the Memorandum Opinion is separately and contemporaneously filed this 27th day of March, 2008.

RICARDO M. URBINA
United States District Judge